(Decided June 17th, 1896).

## THE CALEDONIAN INSURANCE COMPANY OF SCOTLAND *vs.* JULIUS TRAUB & BROTHER.

*Fire Insurance—Stipulation for Estimate of Loss by Appraisers—Withdrawal of Arbitrator Pending Appraisal—Invalid Award—Failure of Arbitration Caused by Assured—Evidence.*

A policy of fire insurance provided that in the event of a disagreement as to the amount of a loss the same should be ascertained by two appraisers, the company and the assured each selecting one who shall first choose an umpire, and upon the failure of the appraisers to agree the difference shall be submitted to the umpire, the award of any two to determine the amount. One of the appraisers appointed under this provision withdrew before the work was completed, and the award was then made by the other appraiser and the umpire. *Held,* that such award was invalid because not in accordance with the stipulation of the policy, which required combined action by the appraisers selected by the parties, and the umpire had no authority to act except when they differed in their estimates.

Under a policy containing the above mentioned stipulation for an appraisement of a loss, the appointment of an appraiser by the assured is a condition upon which the liability of the insurer depends, and if after such appointment the appraiser withdraws at the instigation of the assured there can be no recovery on the policy; but it should be left to the jury to determine the fact whether the failure of the appraisement was caused by the assured or not. The failure of the arbitration without his fault would not bar an action on the policy.

Although the policy provides that the appraisers appointed by the parties shall, before proceeding to act, first select an umpire, the fact that the umpire was not chosen until after the appraisement had been begun would not invalidate an award, since the substantial requirement was that he should decide differences of judgment between the appraisers.

An appraisement of the loss required by the policy to be in writing cannot be proved by oral testimony, but the paper itself must be produced or its absence accounted for.

But when a witness has stated that he was requested by the assured to attend to the matter of the arbitration, he may be asked what he did in pursuance of that request towards procuring an appraisal, such evidence being pertinent to the inquiry whether the failure of the appraisement was due to the fault of the assured or his agent.

When a witness has testified that the value of a stock of goods covered by a policy of insurance was the same in February as it was in July, when the loss occurred, he may be asked what that value was in February.

When a witness denies on cross-examination that he made a certain statement to a certain person, a sufficient foundation is laid for impeaching him by the evidence of that person that he did make such statement.

Appeal from the Circuit Court for Carroll County. At the trial the first exception was taken to the refusal of the Court to allow one of the plaintiffs to be asked, on cross-examination, " If anything was done in pursuance of the agreement for appraisal." In the second exception the Court refused to allow plaintiff to be asked, on cross-examination, " If he ever refused to accept any amount of money that was agreed upon for their loss after the refusal to accept $800." The third exception was taken to the refusal of the Court to allow plaintiff's clerk to be asked, on cross-examination, " If he knew that an amount of money had been determined upon by the appraisers." In the fourth

exception the witness, Reinhart, was permitted, against defendant's objection, to answer a question as to the value of the stock of goods he saw in plaintiffs' store in February or March, 1893. In the fifth exception the witness, Reinhart, after testifying that the plaintiffs had asked him to attend to the agreement of arbitration, was asked what he did in pursuance of that request. This question, upon objection of the plaintiff, was not allowed. The sixth exception is stated in the opinion of the Court.

The plaintiff offered the following prayers :

*Plaintiffs' 1st Prayer.*—If the jury believes from the evidence that the plaintiffs were insured by the defendant company in the policy of insurance offered in evidence, and shall further find that the plaintiffs suffered a loss by fire on the goods mentioned in said policy, if they shall so find ; and shall further find that the defendant company was notified of the said loss, as admitted by the defendant company ; and shall further find that the adjuster of the said defendant company, in response to the said notice, visited the place of fire ; and shall further find the said adjuster thereupon examined into the circumstances of said loss ; and shall further find that he thereupon offered to pay to said plaintiff the sum of money mentioned in evidence, if they shall so find ; and shall further find that the defendant company, or its agent, took the property of the plaintiffs into their possession and retained the same, if they shall so find, for a period of nineteen days ; and shall further find that said defendant company and the plaintiffs entered into an agreement for appraisal of the loss of said fire, and denied its liability on other grounds than the absence of proof of loss, then the jury are at liberty to find from the evidence that the defendant company waived the necessity for all preliminary proofs of loss ; and if they shall find such waiver, then their verdict must be for the plaintiffs. (Granted).

*Plaintiffs' 2nd Prayer.*—If the jury shall find from the evidence in this case that Joseph Rosenfeld and George J. Biernbacher were appointed appraisers by virtue of the

agreement for submission to appraisers offered in evidence ;
and if they shall further find that said appraisers did not
choose any person to decide any specific items of difference
that might arise between them until said Joseph Rosenfeld
and George J. Biernbacher had begun to appraise said
stock ; if the jury shall further find that said appraisers did
begin said appraisemant and enter upon the discharge of
their duties, that then the jury must not consider the award
offered in evidence in determining the amount of damages,
if the jury shall find for the plaintiffs in this case.   (Granted).

*Plaintiffs' 3rd Prayer.*—If the jury shall find for the plain-
tiffs, then their verdict must be only such proportion of the
loss that the policy sued on bears to the whole amount of
insurance on the property in the declaration mentioned—
that is, one-fourth of said entire loss, and that the jury, in
their discretion, may allow interest upon the amount of such
loss, as they may so find, from the expiration of sixty days
after such time as the jury may find said defendant com-
pany waived the furnishing of preliminary proof of loss,
under the facts and circumstances set forth in plaintiffs' first
prayer, if the jury shall find the facts and circumstances set
forth in said first prayer of the plaintiffs.   (Granted).

And the defendant offered the following prayers :

*Defendant's 1st Prayer.*—That from the pleadings and
evidence in this cause the verdict must be for the defend-
ant, because the policy sued on contains a condition prece-
dent, to-wit, that proof of loss must be furnished by the in-
sured to the insurer before suit can be maintained, and there
is no evidence that such proof of loss was furnished, nor is
there sufficient evidence to show waiver by the defendant to
its right in this respect under the conditions of the policy.
(Rejected).

*Defendant's 2nd Prayer.*—If the jury shall find from the
evidence that there was an award under the conditions of
the policy sued on, and shall further find that the plaintiffs
are entitled to a verdict in this case, then the liability of the
defendant is that proportion of the said award that the

amount of this policy bears to the total amount of insurance. (Granted).

*Defendant's 3rd Prayer.*—If the jury shall find from the evidence in this case that the plaintiffs are entitled to recover in this action, then their verdict must be only for such proportion of the loss as shown by the award that the policy sued on bears to the whole amount of insurance on the property in the declaration mentioned—that is, the one-fourth. (Rejected).

*Defendant's 4th Prayer.*—If the jury shall find that the plaintiffs did not, within sixty days after the day of fire testified to, to-wit, on the 23rd day of July, 1893, render a statement in writing to the defendant, signed and sworn to by the plaintiffs, stating their knowledge and belief as to the time and origin of the fire, the interest of the plaintiffs and all others in the property, the cash value of each item thereof and the amount of loss thereon, all incumbrances thereon, all other insurance, whether valid or not, covering any of said property, and a copy of all descriptions and schedules in all said policies, any change in the title, use, occupation, location, possession or exposures of said property since the issuing of the policy sued on in this action, then their verdict must be for the defendant. (Rejected).

*Defendant's 5th Prayer.*—If the jury shall find that J. George Baetjer was selected by Joseph Rosenfeld and George Biernbacher, appraisers, as umpire, and that he acted as umpire with the knowledge of the plaintiffs, and that plaintiffs took part in, or assisted in the appraisal of the stock of merchandise sued for in this action, and did not object to the said Baetjer acting in the capacity of umpire, then in that event said knowledge, taking part in said appraisal and failure to object to the said Baetjer acting as umpire, is a waiver on their part of any informality or irregularity in the proceedings under the agreement to submit to an appraisal. (Rejected).

*Defendant's 6th Prayer.*—If the jury find from the evidence in this cause that the defendant, by its agent, investi-

gated the loss occasioned by the said fire, and offered to pay a certain sum of money in settlement of the claim of the plaintiffs, if they shall so find ; and if they shall further find that the defendant has not denied its liability on other grounds than the failure of the plaintiffs to conform to the conditions in the said policy, which are therein made conditions precedent to maintaining a suit at law for any claim growing out of the writing of said policy, then the jury are instructed that such investigation and offer to pay a sum certain in settlement of said claim are not evidence of waiver of the conditions of the said policy, and their verdict must be for the defendant, unless they shall find waiver on other grounds.    (Rejected).

*Defendant's 7th Prayer.*—The jury are instructed that the entering into an appraisal with a view to an award by the assured and the insurer is not a waiver of the conditions of the policy of insurance, but simply is an ascertainment of the liability of the insurer.    (Rejected).

*Defendant's 8th Prayer.*—If the jury shall find that no entry in writing was made in the book offered in evidence as the appraisal, of any of the merchandise or property appraised by Biernbacher and Rosenfeld, until J. George Baetjer was by them selected as umpire, then they must find that said Baetjer was selected as umpire in conformity with the agreement to submit to an appraisal, and the plaintiffs are concluded by the award made thereunder, and their verdict must be only for such proportion of the loss that the policy sued on in this case bears to the whole amount of insurance on the property in the declaration mentioned—that is, the one-fourth of the amount of the award under the appraisal.    (Rejected).

*Defendant's 9th Prayer.*—If the jury shall find from the evidence that the plaintiffs refused to abide by the award made under the agreement of submission for an appraisal, or to accept the amount decided upon as the amount of loss in this cause, then their verdict must be for the defendant. (Rejected).

The plaintiffs filed special exceptions to the granting of the defendant's 4th, 5th and 6th prayers.

The Court below (Roberts, C. J., Jones and Revell, JJ.), granted all of plaintiffs' prayers and rejected all of defendant's except the second.

The jury returned a verdict for the plaintiff for $1,128.15.

The cause was argued before McSherry, C. J., Bryan. Fowler, Boyd and Russum, JJ.

John P. Poe and James Hewes (with whom were Chas. T. Reifsneider and Chas. T. Reifsneider, Jr., on the brief), for the appellant.

Harry M. Clabaugh, Attorney-General, and George R. Gaither, Jr. (with whom was Benj. Rosenheim on the brief), for the appellees.

Bryan, J., delivered the opinion of the Court.

A former appeal in this case is reported in 80 Maryland, 214. The suit was brought by the appellees on a policy of insurance to recover a loss by fire to the goods insured.

The policy provides for determining the amount of loss as follows : " Said ascertainment or estimate shall be made by the insured and this company, and if they differ, then by appraisers, as hereinafter provided ; and the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate and satisfactory proof of the loss have been received by this company." *    *  " In the event of disagreement as to amount of loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire ; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and failing to agree shall submit their differences

to the umpire, and the award in writing of any two shall determine the amount of such loss."

One of the cardinal questions in the case depends on the effect and legal consequences of these clauses. The fire occurred July the twenty-third, 1893. An agreement for the appraisement of the loss was signed by Traub & Brother on one hand and the Insurance Company on the other, on the fourth day of August of the same year, and Rosenfeld and Biernbacher were appointed appraisers. They proceeded to appraise the loss, and appointed Baetjer umpire. There is testimony that the appraisement was begun before the umpire was appointed; and there is testimony on the other hand that the umpire was appointed before any entry had been made in a book by the appraisers. There is evidence that Rosenfeld withdrew after some progress had been made in the appraisement and refused to have anything more to do with it, and that the work was then completed and an award made by the other appraiser and the umpire without his concurrence. This award is not in accordance with the stipulations of the policy. It was required that the appraisers acting together should estimate the loss, and when they failed to agree their differences were to be submitted to the umpire. It was necessary that there should be joint action by both of the appraisers, conference together, and a result reached, if possible, by their combined action. The umpire had no authority to act, except when they differed in their estimates. As it occurred, Rosenfeld's judgment was not exercised on a good many questions involved in the appraisement; and the other appraiser and the umpire assumed that they had the authority to make the decision without him, and they together made up the award. Independently of the distinct requirement of the policy the law would require combined action by the appraisers who were selected by the parties. They occupied the position of arbitrators. And with respect to the duties of arbitrators the law is fully settled. In the first volume of *American and English Encyclopædia of Law*, p. 683, a great number

of authorities are collected, and the accepted doctrine is stated as follows : " All must be present throughout each and every meeting, equally whether the meeting be for hearing the evidence or arguments of the parties or for consultation or determination upon the award. The disputants are entitled to the exercise of the judgment and discretion, and to the benefits of the views, arguments and influence of each one of the persons whom they have chosen to judge between them; and they are entitled to these, not only in the award, but at every stage of the arbitration, even where a majority are empowered to decide." The fact that the umpire was not chosen until after the appraisement had been begun would not have invalidated the award. The substantial requirement was that he should decide the differences of judgment between the appraisers ; the time at which he was appointed could not injure any one's rights, provided he was on hand to decide the differences between the other two. Although the direction as to his appointment was not strictly followed in this particular, the variation did not interfere with any of the duties which he was appointed to perform and was not of essential importance.

There is something unexplained about Rosenfeld's desertion of the arbitration after he had commenced it. Evidence was given by Reinhardt as follows : " The witness testified on cross-examination that he told Traub that he would have to go into arbitration ; he was acting for the plaintiffs. It was after the offer of $816 had been made and refused that arbitration was spoken of. I understood from Mr. Hewes that he was acting for all four companies. I told Mr. Traub that they would have to enter into an agreement of arbitration, and he said all right ; he asked me attend to it. I told him I would." Baetjer, the umpire, testified that on the second day of the appraisement he received from Rosenfeld the following telegram :

BALTIMORE, MD., Aug. 10th, 1893.

To. J. G. BAETJER, c-o. J. TRAUB & BRO.,

*Union Bridge, Md.*

Reinhardt is dissatisfied as matters stand; best make no appraisement until you see him.          Jos. ROSENFELD.

The ascertainment of the amount of the loss by appraisement was a condition precedent to the payment of the sum of money for which the Insurance Company was liable.    And it was the duty of each of the parties to the contract of insurance to select an appraiser.    If the insured should refuse to perform this duty, he would be disabled to recover in a suit on the policy.    And, of course, it is necessarily implied that the appointment of an appraiser should be made in good faith, with the purpose and intention, so far as it depended on the parties, that the appraisement should be duly made.    If the insured should interfere to prevent it, or should in any way cause it to be defeated, the consequences would be the same as if he had refused to make an appointment.    The withdrawal of the appraiser appointed by the insured without any apparent good reason, and with no explanation except such as is given by the telegram above mentioned, ought to have been the subject of an inquiry by the jury.    It ought to have been left to them to determine whether the failure of the appraisement was in any way caused by the agency or procurement of the insured; that is, supposing that they found as a fact the sending of the telegram, and that it was caused or authorized by Reinhardt, and that Reinhardt was attending to this business in behalf of the insured by their request, as he testified.    On the hypothesis that Reinhardt was their agent, they would be responsible for his action; and if it caused the failure of the appraisement there can be no recovery in this suit.    Because this inquiry was not submitted to the jury in any of the plaintiff's prayers, the judgment must be reversed.    If the appraisement failed without the fault of the insured, the failure would not be any impediment to their right of recovery if they could maintain their suit on other grounds.

The question of waiver was decided on the former appeal; and on this point the plaintiffs' first prayer was cor-

rect ; but there was error in stating that a verdict ought to be rendered for the plaintiffs on the facts stated. The award was void for the reasons which we have stated ; it would not have been invalidated, however, by the finding of the facts set forth in the plaintiffs' second prayer. The defendant's second prayer was granted. All of its other prayers were properly refused for reasons which will appear from what has been stated. There were seven exceptions by the defendant to the admission of evidence. If the question by defendant in the first exception was intended to put the appraisement in evidence, it was properly overruled. It could not be proved in that way. The paper itself ought to have been produced, or its absence accounted for, according to the rules of evidence. We do not perceive that it would have been relevant in any other aspect of the case. In the seeond exception one of the plaintiffs who had been examined in behalf of himself and partner, was asked " if he ever refused to accept any amount of money that was agreed upon for their loss after the refusal to accept eight hundred and odd dollars." As the case had been presented by the evidence, it did not appear in what way the refusal of the plaintiffs to accept a sum of money was a matter of importance. The question in the third exception was an attempt to prove by parol the contents of a written instrument—that s to say, the award of the appraisers. In the fourth exception the witness was asked by the plaintiff to state the value of the stock of goods in the store of the insured in February or March, 1893. The fire took place on the twenty-third of July of the same year ; but one of the plaintiffs had already testified that the value of the goods in the store at that time was about the same that it was on the twenty-third of February. We may notice that the answer of the witness is not stated in this exception. There was no error in permitting the question to be asked. In the fifth excepti on after the witness, Reinhardt, had testified that one of the Traubs had asked him to attend to an agreement for arbitration for him, and that he had agreed to do so, he was asked

by the defendant, " What did you do in pursuance of the power that was delegated to you, or the request that was made to Mr. Traub & Bro. towards procuring an appraisal to be made in this matter ?" The Court refused to allow the question. The question is different from the one in the first exception. It inquired into the personal action of the witness and tended to throw light on his connection with the appraisement. It might have been more pointed and specific ; but it covered in a general way everything that he had done in the matter, and if he had in any way interposed to defeat the appraisement. The question applied to his conduct in that particular. It was germane to the matter about which he was testifying. There was error in refusing to permit the question to be asked. In the sixth exception the witness, Russell, was asked, " Did Mr. Samuel Reinhardt say to you, somewhere in the rear of the store, on the occasion you met him there, that Traub's books were wrong ; that he had no such stock as he claimed, and that his charges were erroneous, or something to that effect," and the Court refused to permit the question to be answered. Reinhardt had already testified, on cross-examination, that he supposed that he had a conversation with Russell, though it was mostly with Hewes, and that he did not " remember having any conversation specially with Mr. Russell; did not say to Mr. Russell that he had told Traub that his books were wrong, and that he had no such stock as he claimed to have ; never said anything to him or Mr. Hewes about stock being over-estimated by Mr. Traub." He was speaking in reference to meeting that he and one of the Traubs had with Hewes and Russell on the twenty-eighth of July in reference to this business. He had given evidence, on his direct examination, tending to prove that the stock of goods in the store of the plaintiffs at the time of the fire was worth from six to seven thousand dollars, thereby corroborating the evidence of Julius Traub. We think that a sufficient foundation had been laid in the cross-examination of this witness to permit the introduction of this evidence to contradict him. This

testimony ought to have been admitted if the question had not been leading in its form.    1 *Greenleaf on Evidence*, sec. 435.    In the seventh exception the defendant made a motion to strike from the evidence the inventory of the plaintiffs ; the Court, in effect, decided that the inventory was not in evidence.

For the errors mentioned the judgment must be reversed.

*Reversed and new trial awarded.*