WESTENHAVER BROS., Appellants, v. GERMAN AMERICAN INSURANCE COMPANY, Appellee.

**Insurance:** NOTICE OF LOSS.    POLICY AND STATUTE.    Under acts Eighteenth General Assembly, chapter 211, section 3, requiring an assured, in order to maintain an action for his insurance, to prove that he has given written notice of such loss, under affidavit stating the facts as to how the loss occurred, and its extent, and directing that such requirement shall govern all policies, notwithstanding anything therein to the contrary, an assured who has given such notice may maintain his action for the insurance though such notice does not contain all that is required for the notice prescribed by the policy.

ARBITRATION AS A CONDITION PRECEDENT.    Where an insurance policy makes arbitration of the amount of a loss a condition precedent to the right to recover by suit, a failure of the arbitrators selected by each of the parties to agree on an umpire, through no fault of either of the parties after an honest attempt to do so, does not justify assured in refusing to proceed with the arbitration by the selection of a new appraiser and in suing for the amount of his loss.

*Jury Question.*    In an action by an insured who has failed to comply with his policy, requiring arbitration as condition precedent to a recovery by suit, it is not error to direct a verdict for defendant, though it is contended that the refusal to arbitrate was due to defendant's bad faith, which was a question for the jury, where the evidence was sufficient to show that defendant was not responsible for the disagreement.

WAIVER OF ARBITRATION.  In an action on a policy, a defense to which was failure to arbitrate as required by the policy, etc., given to plaintiff by other companies having policies on the property to select appraisers are not admissible in evidence as showing an agreement by defendant to submit all differences outside the terms of his policy, and so waiving the appraisement, where there was no evidence that all the interested companies agreed to submit the matter of damages to the joint arbitrator, but all of them were merely demanding arbitration under their policies.

*Appeal from Winnebago District Court.*—HON. C. H. KEL-LEY, Judge.

SATURDAY, DECEMBER 22, 1900.

ACTION at law on a policy of fire insurance.  Directed verdict for defendant, and plaintiff appeals.—*Affirmed.*

*George E. Clarke* for appellants.

*Carr & Parker* for appellee.

DEEMER, J.—Defendant issued to plaintiffs a policy of fire insurance covering a stock of general merchandise in the town of Buffalo Center.  The policy contained conditions requiring an arbitration of the amount of loss in case of damage by fire, precedent to a right of recovery thereof.  The amount was to be ascertained by two competent and disinterested appraisers, the insured and the company each selecting one, and the two so chosen to select a competent and disinterested umpire.  The appraisers were then to estimate the loss and appraise the same, stating separately sound value and damage, and, failing to agree, were to submit their difference to the umpire.  After the issuance of the policy, and about the twenty-fifth day of February, 1898, a fire occurred in a building across the street from the place where plaintiff's stock of merchandise was located, and it became necessary to hurriedly remove the goods from the building in which they were kept, in order to save them.  Plaintiffs claim that as a

result of the removal, and because of smoke, water and fire, the stock was badly damaged, and they bring this action to recover the amount of loss. The policy further provides that in case of loss: "If fire occur the insured shall give immediate notice of any loss thereby, in writing, to this company, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, make a complete inventory of the same, stating the quantity and cost of each article and the amount claimed thereon, and within sixty days after the fire, unless such time is extended in writing by this company, shall render a statement to this company, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire; the interest of the insured and of all others in the property; the cash value of each item thereof, and the amount of loss thereon; all incumbrances thereon, all other insurance, whether valid or not, covering any of said property; and a copy of all the descriptions and schedules in all policies; any changes in the title, use, occupation, location, possession or exposure of said property since the issuing of this policy; by whom and for what purpose any building herein described, and the several parts thereof, were occupied at the time of fire—and shall furnish, if required, verified plans and specifications of any building, fixtures or machinery destroyed or damaged, and shall also, if required, furnish a certificate of the magistrate or notary public (not interested in the claim as a creditor or otherwise, nor related to the insured) living nearest the place of fire, stating that he has examined the circumstances, and believes the insured has honestly sustained loss to the amount that such magistrate or notary public shall certify." As a defense to the action, defendant pleaded, among other things, that the amount of loss was not ascertained by appraisers, as provided by the terms of the policy, although it had done all that was required of it by the terms thereof, and that plaintiffs had failed and

neglected to give notice and furnish the proofs of loss agreed
upon in the contract of insurance. In reply the plaintiffs
pleaded that failure to arbitrate was due to the fault and
fraud of defendant, and that defendant, by its conduct, had
waived appraisement of the loss. They further pleaded
that they gave the notice and made the proofs of loss re-
quired by law, and that after defendant received them it
served notice on plaintiffs to arbitrate, thereby waiving any
further or other proofs. They also pleaded an attempt at
common-law arbitration between the parties to this action,
and plaintiffs and other insurance companies issuing poli-
cies on the same stock of goods, as a waiver of the conditions
of the policy. On these issues the case was tried to a jury,
and at the conclusion of the evidence the court directed a
verdict for the defendant.

The two main propositions contended for in argument
relate to the sufficiency of the notice and proofs of loss, and
to the condition of the policy requiring an appraisement or
arbitration of the amount of loss, as a condition precedent
to a right of action. It is conceded that notice and proof
of loss required by the terms of the policy were not given,
and it is undisputed that the amount of loss was not
ascertained by arbitrators or appraisers. Plaintiffs
offered to show, however, that they gave the notice
and made the proofs required by section 3, chapter
211, Acts Eighteenth General Assembly, in force when
the policy was issued; and this, they assert, is all
that was required of them. That section provides, in effect,
that in order to maintain his action it shall only be nec-
essary for the assured to prove that he has given notice
in writing of such loss, accompanied by an affidavit stat-
ing the facts as to how the loss occurred, so far as they
are within his knowledge, and the extent of the loss, which
notice shall be given within 60 days from the time the loss
occurred. The section concludes as follows: "All the
provisions of this chapter shall apply to and govern all con-
tracts and policies of insurance contemplated in this chap-

ter, anything in the policy or contract to the contrary notwithstanding." Were the questions *res integra*, the writer would be inclined to agree that this statute has reference to policies of insurance upon buildings, and not to policies on ordinary personal property. Indeed, that seems to be the only result, if we are to follow *Joy v. Insurance Co.*, 83 Iowa, 13, to its logical conclusion. See, also, *Martin v. Insurance Co.*, 85 Iowa, 643. But in *Welsh v. Insurance Co.*, 71 Iowa, 339, and *Warshawky v. Insurance Co.*, 98 Iowa, 221, we held that the section applies to policies of insurance on personal property, and that, if plaintiff gives notice and makes the proof of loss therein required, he has done all that is necessary in this respect, although the policy may provide for more. Following these cases, we are constrained to hold that the court was in error in rejecting the proofs of loss made by plaintiffs that were in exact accord with the requirements of the statute quoted. In view of some changes made in the language of the act by section 1742 of the Code, the writer does not wish to be understood as assenting to such a construction of that section. He is of the opinion that it only has reference to policies on buildings. Certainly that was the proper construction before the adoption of chapter 44 of the Acts of the Twenty-seventh General Assembly. The effect of the new Code on prior contracts, and the force to be given the change of language therein, is not argued, and will not be considered on this appeal. But it does not follow that the case should be reversed for this error. If the second defense made by defendant is good, the error was without prejudice.

II. Arbitration or appraisement of the amount of loss and damage was a condition precedent to the right of recovery, and unless waived, or the defendant has estopped itself by conduct from relying thereon, the motion to direct was properly sustained; for it is conceded that no arbitration or appraisement was had. It appears from the evidence that an adjuster representing the defendant and another company called on plaintiffs just

after the fire and attempted to adjust the loss.   Failing in this, he served notice on the plaintiffs to put the stock in order, separate the damaged from the undamaged, and make complete inventory of the same, in accord with the terms of the policy, and that submission of the amount of loss to appraisers was required.   Plaintiffs were also informed by this notice that defendant would at once select an arbitrator, and they were requested to name a time when and place where, the appraiser so appointed could meet the one selected by plaintiff.   Complying with the statement, defendant selected one Larson, a merchant of wide experience, living at Crystal Lake, Minn., about thirty miles distant from Buffalo Center.   Plaintiff selected one Hubbard, a livery stable keeper in the town of Buffalo Center, who was the father of plaintiff's cashier.   Shortly after the service of the notice these appraisers met at Buffalo Center and attempted to choose an umpire.   After spending some days in an effort to agree, they mutually came to the conclusion that they could not agree, and so informed the parties.   Thereupon defendant selected a new appraiser, and also demanded of plaintiffs that they select another and proceed with the appraisement.   This plaintiffs refused to do, and they immediately brought this action.   When the appraisers first appointed met, they each submitted a list of names to the other from which to select an umpire.   The appraiser appointed by the defendant presented a list of twenty-two names of merchants and business men living in Forest City, Britt, Wesley, Garner, Clear Lake, Mason City, Correctionville, Sioux Rapids, Ida Grove, and Buffalo Center, Iowa, and Minneapolis and Blue Earth, Minn.   So far as shown, they were all men of excellent character.   The arbitrator selected by plaintiffs objected to those who lived in the immediate vicinity of Buffalo Center, because competitors of plaintiff, and to those who lived more distant, as at Marshalltown and Des Moines, as too distant.   Another was rejected because he was a banker.   There is no showing that Larson was actuated by any other motive than to

secure an impartial umpire in presenting his list. Hubbard presented a list of twelve names of merchants and business men residing at Clear Lake, Belmond, Buffalo Center, Garner, and Algona, Iowa, and Winona and Blue Earth, Minn., and Columbus, Prescott, and Delavan, Wis., and Rockford, Ill. One of them was an old partner of Hubbard, and one or both had had losses from fire, and difficulties with insurance companies. Another was an old-time friend of Hubbard, and another the landlord of the hotel where the plaintiffs and many of their employes boarded. Another had had difficulty in adjusting an insurance loss, and some were nonresidents of the state, and were unknown to either of the appraisers. Many of the names were suggested by plaintiffs or their employes. It also appears that Hubbard constantly counseled with and was largely directed by plaintiffs in his attempt to secure an umpire. These facts are mentioned, not for the purpose of showing fraud or bad faith, but as evincing a purpose on the part of plaintiffs to derive every advantage possible in the arbitration. There is, as we have said, no evidence that Larson was acting on the immediate suggestion of the defendant or its agents; and so far as he was actuated by no other motive than to secure a fair and unprejudiced umpire, even if he did not show the best of judgment, the defendant is not to be held responsible for his mistakes. There is little doubt that the appraisers attempted to agree, and the trial court. no doubt, found that they would have agreed on some of the names presented by Larson, had not plaintiffs objected thereto. We are content to hold that this is as much as can be claimed from the evidence,—that after an honest and earnest attempt the arbitrators failed to agree, and that defendant was in no manner responsible for their disagreement. What, then, is the law applicable to such a state of facts? If an umpire is not chosen because of a purpose on the part of either of the parties to prevent or unreasonably delay the adjustment of the controversy, or

because of the improper influence of the insurer or the insured on the appraiser, calculated to prevent or delay the submission, the party responsible for the delay or misconduct will be held to have waived the appraisement. *Read v. Insurance Co.*, 103 Iowa, 315, and cases cited. There is no evidence from which a jury would be warranted in finding that the arbitration failed because of perverse conduct or want of good faith of the defendant or its adjuster. Plaintiffs and their appraiser were as much at fault, if not more than, the defendant; hence the rule quoted from the *Read Case* does not apply. Ascertainment of the amount of loss by appraisement was a condition precedent to a right of action, and, if the appraisers selected failed to agree on a third, this does not in itself justify a suit for the amount of the loss. In the absence of bad faith or acts intended to defeat arbitration on the part of the insurer, the plaintiff must propose the selection of other arbitrators, to the end that an award may be agreed upon, and the basis for action determined. *Davenport v. Insurance Co.*, 10 Daly, 355; *Altman v. Altman*, 5 Daly, 436; *Caledonian Insurance Co. v. Traub*, 83 Md. 524 (35 Atl. Rep. 13); *Carroll v. Insurance Co.*, 72 Cal. 279 (13 Pac. Rep. 863); *Levine v. Insurance Co.*, 66 Minn. 139 (68 N. W. Rep. 855). Following this rule, it was plaintiff's duty, when the appraisers first selected failed to agree, through no fault of either of the parties, to select a new appraiser, in order that the amount of their recovery should be fixed. They could not arbitrarily proceed to set aside the agreement for arbitration and sue for the amount of loss; for the defendant agreed to pay the amount found due by the appraisers, and in the absence of fraud, bad faith, or culpable neglect, or other conduct amounting to a resfusal to proceed with arbitration, the defendant had the right to stand on its contract rights. It is said in argument, however, that the question of defendant's good faith was for the jury, and that the court was not justified in invading its province and

directing a verdict. The "scintilla doctrine" no longer obtains in this state, and under the rule announced in *Meyer v. Houck*, 85 Iowa, 319, there was no error in taking the case from the jury.

III. Finally it is insisted that the court was in error in excluding notices given to plaintiffs by other companies issuing policies on the stock in question, directing them to select appraisers. It is claimed that these notices would show a concert of action on the part of all the companies interested, and that, with other evidence adduced, would prove an agreement to submit all differences outside and beyond the terms of the policies, thus waiving the appraisement required by defendant's policy, and estopping the defendant from insisting on compliance therewith. There is no doubt that defendant might waive the provision of the policy requiring appraisement, and it is equally clear that, if it entered into an agreement with plaintiffs for an appraisement, not contemplated by the terms of the policy, it did waive an appraisement under the policy. *Harrison v. Insurance Co.* (C. C.), 67 Fed. Rep. 577; *Adams v. Insurance Co.*, 85 Iowa, 6; *Bishop v. Insurance Co.*, 130 N. Y. App. 488 (29 N. E. Rep. 844). There is evidence in the record tending to show that all the companies interested agreed to submit the matter of damages to one joint arbitrator, but it is also shown that the arbitration was demanded by each and all of the companies under the provisions of their respective policies. At least, that was defendant's demand. And it is also shown that the appraisers selected proceeded to act under the terms of the agreements contained in the policies. The mere fact, then, that the insurance companies all selected the same arbitrator, would neither show nor tend to show that the arbitration was other than the one required by the terms of the policies. There was no agreement to submit, outside of that contained in the policies of insurance. True, the insurance companies selected the same arbitrator, but this does not show, in itself, that they were acting outside

of the scope of the original agreement for appraisement. Indeed, when the evidence was offered showing the conversation between the parties at the time it is claimed the agreement was made, counsel for plaintiffs said that he was not offering to prove anything inconsistent with the terms of the policies. This we think was true. The notices offered by plaintiffs were properly rejected, for they showed that each of the companies was proceeding to act under its policy. Even if it was error to reject them, the ruling was without prejudice. The case is readily distinguishable from *Harrison's Case, supra.* There there was an arbitration not contemplated by the provisions of the policies. Some other offers were made by plaintiffs' counsel, that need not be specifically referred to. Suffice it to say that, if plaintiffs had been permitted to prove all that their counsel asked, they would not have shown an attempt at arbitration outside of, and inconsistent with, the terms of the policies. No prejudicial error appears, and the judgment is AFFIRMED.