CARP, Respondent, v. QUEEN INSURANCE COM-
PANY OF AMERICA, Appellant.

St. Louis Court of Appeals, February 16, 1904.

1. **INSURANCE: Arbitration of Loss: Waiver.** A denial by an in-
surance company of any liability for a loss dispenses with a
term of the policy requiring an appraisement of the amount of
the loss.

2. ———: ———: **Pleading Non-Liability no Waiver.** But when
suit is brought by the insured for damages sustained on account
of a loss, a denial of liability in the company's answer, which
pleads incendiarism or other act of insured sufficient to annul
the policy, does not waive the defense of no appraisement,
where that is also pleaded.

3. ———: ———: **Answer in Former Suit.** And an answer thus
denying liability, filed in a former suit, on the same cause of
action, which was dismissed, was improperly received in evi-
dence to show waiver of appraisement.

4. ———: ———: **Preventing Appraisement by Insured.** Where
an insurance policy provides for an appraisement, if the insured,
or his chosen appraiser, acts in bad faith and prevents an ap-
praisement, by postponing indefinitely the choice of an umpire,
or otherwise, the fact will be a defense to any suit he may bring
for the loss.

5. ———: ———: **Preventing Appraisement by the Insurer.** And
where the insurer does not in good faith carry out an agreement
to arbitrate the amount of the loss, but endeavors to utilize the
agreement to obtain delay, it can not demand an appraisal as a
condition precedent to the insured's right to sue.

6. ———: ———: **Misbehavior of Appraiser Imputed to Party
Choosing Him.** The unfair behavior of an appraiser may be
taken into account against the party that appointed him, in fix-
ing the blame for the failure to execute an appraisal agreement.

7. ———: ———: **Preventing Appraisal by Both Parties.** If both
parties to an insurance contract, endeavor to prevent an ap-
praisal, the appraisement clause of the contract will cease to be
a condition precedent to a right of action for the loss.

8. ———: ———: **Honest but Futile Effort by Appraisers.** An honest, but futile effort by the appraisers, to arbitrate, unless it causes too protracted and wholly unreasonable delay, will not dispense with the need of appraisal.

9. **EVIDENCE: Documents: Issue of Fact.** The rule of law that courts must determine the meaning of documentary evidence has no relevancy when the dispute is not as to be the legal meaning of documents, but as to their tendency to prove one side or the other of an issue of fact, and different inferences may be fairly drawn from them as to what the truth was.

10. **INSURANCE: Arbitration: Disagreement as to Amount of Loss.** The insured, who has agreed to submit the ascertainment of a loss to arbitration can not afterwards be heard to say that the arbitration clause in his policy is inoperative because there is no dispute as to the amount of the loss.

11. ———: ———: **Withdrawing From Arbitration Agreement.** The insured can not withdraw from an agreement to arbitrate, where the policy simply provides for an appraisal of the amount of damages sustained and the arbitration is not intended to cover the whole question of liability.

12. **PRACTICE: Cross-Examination of Witness.** It is competent, in cross-examining a witness, to ask whether he has borne alias names, for the purpose of affecting his credibility.

Appeal from Lawrence Circuit Court.—*Hon. H. C. Pepper,* Judge.

REVERSED AND REMANDED.

*Edward J. White* and *Barger & Hicks* for appellant.

(1) The determination of the amount of the loss or damage by agreement of the parties or by award of appraisers was, under the policy sued on, a condition precedent to the maturity of the claim and to the right of the plaintiff to sue thereon. Murphy v. North British, etc., Ins. Co., 61 Mo. App. 323; McNees v. Ins. Co., 61 Mo. App. 335; Ostrander on Insurance, sec. 257; 4 Joyce on Insurance, sec. 3231 *et seq.*; Woods on Fire Insurance (2 Ed.), p. 1013; May on Insurance (3 Ed.), sec. 493; Scott v. Avery, 8 Exch. 487; Tredwin v. Hol-

man, 1 H. & C. 72; Elliott v. Royal Exchange Assurance Co., L. R., 2 Exch. 245; Hamilton v. Ins. Co., 136 U. S. 242, 19 Ins. Law Jour. 865; U. S. v. Robeson, 9 Peters 319; Trott v. Ins. Co., 1 Clif. 439; Perkins v. U. S. Elec. Light Co., 16 Fed. 513; Gauche v. Ins. Co., 10 Fed. 347, 11 Ins. Law Jour. 361; Kanochea v. Railroad, 34 Fed. 471; Crossley v. Ins. Co., 27 Fed. 30; Yeomans v. Ins. Co. (U. S. C. C., New Jersey), 5 Ins. Law Jour. 858; Kahnweiler v. Ins. Co., 57 Fed. 562; Hamilton v. Ins. Co., 137 U. S. 370, 20 Ins. Law. Jour. 97; Mutual Fire Ins. Co. v. Alward, 61 Fed. 751; Fox v. Railroad, 3 Wallace, J. R. 243; Ins. Co. v. Young, 86 Ala. 425; Old Sauceleto Land & Dry Stock Co. v. Ins. Co., 66 Cal. 253; Adams v. Ins. Co. (Cal.), 11 Pacific 672; Hall v. Ins. Co., 57 Conn. 105, 18 Ins. Law Jour. 518; Carroll v. Ins. Co. (Cal.), 16 Ins. Law Jour. 764; Denver, etc., Con. Co. v. Stout, 8 Colo. 61; Adams v. Ins. Co., 70 Cal. 198; Campbell v. Ins. Co., 1 McArthur (D. C. 250; Ins. Co. v. Lewis (Fla.); 10 Southern 297; Ins. Co. v. Creighton, 51 Ga. 95; Ins. Co. v. Stocks, 149 Ill. 319; Ins. Co. v. Bishop, 154 Ill. 1; Ins. Co. v. Pulver, 126 Ill. 329; Zalesky v. Ins. Co., 102 Iowa 613, 27 Ins. Law Jour. 517; Ins. Co. v. Stiger, 109 Ill. 254; Gere v. Ins. Co., 67 Iowa 272, 23 N. W. 136; Berry v. Carter, 19 Kan. 135; Ins. Co. v. Caze, 14 Ky. Law 810; Reed v. Ins. Co., 136 Mass. 572, 14 Ins. Law Jour. 465; Hutchinson v. Ins. Co. (Mass.), 26 N. E. 439; Gassner v. Ins. Co., 42 Minn. 315, 44 N. W. 252, 19 I. L. J. 243; Chippewa Lum. Co. v. Ins. Co. (Mich.), 44 N. W. 1055, 19 Ins. Law Jour. 535; Ins. Co. v. Traub (Md.), 83 Md. 524, 35 Atl. 13, 25 Ins. Law Jour. 791; Allegre v. Ins. Co., 6 Har. & J. (Md.) 408; Mosnes v. Ins. Co., 50 Minn. 341, 52 N. W. 932; Randall v. Ins. Co., 10 Mon. 340, 20 Ins. Law Jour. 596; Ins. Co. v. Wild, 8 Neb. 427; Ins. Co. v. Wolf, 50 N. J. L. 453, 14 Atl. 561; Herndon v. Ins. Co., 107 N. Car. 183, 12 S. E. 126; Pioneer Mfg. Co. v. Assur. Co., 106 N. Car. 28; Ins. Co. v. Putnam, 20 Neb. 331, 30 N. W. 246; Ins. Co. v. Carnahan (Ohio, J.

1900), 58 N. E. 805; Mentz v. Ins. Co., 79 Pa. St. 478; Ins. Co. v. Clancy, 71 Tex. 5, 10 Ins. Law Jour. 68, 8 S. W. 630; Chapman v. Ins. Co., 89 Wis. 572, 61 N. W. 422. (2) No evidence was introduced showing an agreement of parties or an award of appraisers fixing the amount of the loss, nor was any evidence offered tending to show a waiver thereof. On the contrary, the evidence shows the parties entered into contract after the loss to appraise the amount thereof. The court, therefore, erred in refusing to direct a verdict for defendant as requested. (3) The pleading of a defense in bar in the same answer in which a plea in abatement is asserted is not a waiver of the matter pleaded in abatement. Little v. Harrington et al., 71 Mo. 390; Cohn v. Lehman et al., 93 Mo. 574. (4) A failure of the appraisers to agree on an umpire or upon the amount of loss or damage is not a waiver. The letters, therefore, introduced against defendant's objections, and marked alphabetically A to S inclusive were erroneously admitted in that they did not tend to prove a waiver and were otherwise irrelevant to any issue, and so far as these letters were concerned, or the fact that the appraisers did not agree upon an umpire, the verdict should have been directed as requested. 2 May on Insurance (3 Ed.), sec. 496b; Ostrander on Fire Insurance (2 Ed.), p. 620; Westenhaver et al. v. Ins. Co. (Iowa), 84 N. W. 717; Fisher v. Ins. Co., 50 Atl. 282; Levine v. Ins. Co., 66 Minn. 138, 68 N. W. 855; Davenport v. Ins. Co., 10 Daly 535; Carroll v. Ins. Co., 72 Cal. 297, 13 Pac. 863; Hood v. Hartshorn, 100 Mass. 117; Ins. Co. Maitland, 63 N. E. 755, 158 Ind. 393; Silver v. Assurance Co., 164 N. Y. 381. (5) All that passed between the appraisers being contained in the letters marked alphabetically A to S inclusive, the legal effect of such letters was a question of law for the court and not for the jury. Their legal effect was not that the defendant thereby waived the determination of the amount of the loss by award of appraisers; and, therefore, the court erred in admitting

such letters. They showed, on the contrary, that the assured's appraiser prevented the selection of an umpire. (6) A denial of liability by the defendant for the first time in an answer when sued is not a waiver of the condition requiring that the amount of the loss shall be determined by agreement of the parties or award of appraisers before any claim becomes due. (7) The substantive facts alleged in the petition, as contradistinguished from the legal conclusions of the pleader, do not show that the claim was due and payable when the suit was brought, and, therefore, the court erred in overruling the motion of defendant in arrest of judgment. 4 Ency. of Plead. & Prac., 641; Lanford v. Sanders, 40 Mo. 160; Burdsall v. Davies, 58 Mo. 138; Salisbury v. Rixon, 50 Mo. 142; Simms v. Steamboat "Indiana," 28 Mo. 335; Pearson v. Ins. Co., 26 Ins. Law Jour. 176; Carberry v. Ins. Co., 51 Wis. 565, 8 N. W. 406.

*McNatt & McNatt* and *H. H. Bloss* for respondent.

(1) Our contention is, first; there was not a disagreement as to amount of loss and this was the essential that made the contract binding on the assured even after being signed by him. Boyle v. Ins. Co., 169 Pa. St. 349, 32 Atl. 551; Chapman v. Ins. Co. (Wis.), 62 N. W. 422; Farnum v. Ins. Co., 83 Cal. 246, 23 Pac. 869. (2) Even had this disagreement taken place respecting the loss, and as in this case the assured discovered after signing the arbitration agreement that the intention of the company was not to pay the loss, after it was ascertained by award, would he still have to go on with the proceeding that would bring nothing? The evidence is that the arbitration contract was signed May 14, 1902, after the arbitration agreement was signed, Mr. S. Carp met Mr. Welch at Monett, asked him respecting the loss, and he replied, the matter must be adjusted by the courts, or words to that effect. He then wrote his

brother that suit would have to be brought. At this time Mr. Welch was proven to be the agent of the company by the signature on this very arbitration contract. Having thus ascertained the company's intention after signing the contract, the arbitration clause of the policy was no longer available as a defense to defendant. Dautel v. Ins. Co., 65 Mo. App. 51. (3) As further indicating the intention of the company respecting the loss, the evidence of James Wilson, and that of the company itself by its solemn declaration in court, was offered showing a denial of liability and a waiver of the policy condition, which even if effective according to defendant's contention by reason of a disagreement of the amount of loss, would be waived by such intention of the company. Seipel v. Ins. Co., 55 Mo. App. 233; Fink v. Ins. Co., 60 Mo. App. 578. (4) The letters show that Mr. Jonas was trying to secure appraisers at or in the neighborhood of the fire. Each one selected after repeated suggestion of persons by Mr. Jonas who were refused by Mr. Potts without assigning any valid reason and in turn wanting persons away from the place of the fire. This evidence offered in this case by the company showed a complete waiver of their right to insist on arbitration without anything further, because appellant was entitled to an umpire in the neighborhood of the fire. McCullum v. Ins. Co., 113 Mo. 606; Ins. Co. v. Bishop, 49 Ill. App. 388; Braddy v. Ins. Co., 115 N. C. 354. (5) We think this a fair analysis of this correspondence and showed a waiver of itself upon which the jury were entitled to pass. Brock v. Ins. Co., 102 Mich. 583, 47 Am. St. 562, 26 L. R. A. 623; Bishop v. Ins. Co., 56 Hun 642, 9 N. Y. Sup. 350, affirmed N. Y. 488. (6) But if the court does not want to even take this view of it and simply want to accord us evenly at fault in this correspondence, the admitted fact remains that the arbitrators could not agree on an umpire and this entitled to the plaintiff to sue, since there was no clause of the agreement providing for a resubmission in such

contingency, and no law of the state providing for same. 2 Am. and Eng. Ency. of Law (2 Ed.), p. 601, citations; Pretzfelder v. Ins. Co., 116 N. C. 491.

GOODE, J.—The plaintiff owned a stock of merchandise in Aurora, Missouri, on which he held a policy of insurance from the defendant company. During the life of the policy, to-wit: January 29, 1902, the stock was destroyed by fire and this action was instituted to recover the promised indemnity of one thousand dollars. The plaintiff was the proprietor of the goods, but he resided in St. Louis and left the management of the store to his brother Sam Carp, who appears to have had general authority as the plaintiff's agent. Plaintiff was in Aurora, lodging with his brother, when the loss occurred. The fire broke out, or was detected, shortly after midnight. The two brothers swore they retired that night about nine o'clock and did not leave their beds until aroused by the alarm of fire; but there was considerable testimony that Sam Carp was seen about the store at ten o'clock and again shortly before the fire. This testimony clouds the case with suspicion concerning the honesty of the loss and supports the defense that it was due to the incendiary act or procurement of the plaintiff. There was contervailing evidence in favor of an innocent origin of the fire, and we hold this issue was settled by the finding of the jury in plaintiff's favor. We are asked to reverse the finding on the assumption that the evidence to prove the fire was incendiary was so overwhelming as to produce an irresistible conviction that it was; but we decline to so hold. There was much very contradictory evidence and enough on either side of the question to support whatever finding the jury might make.

The point we must decide arises on a clause of the contract providing that:

"In the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by

two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire, and the award in writing of any two shall determine the amount of such loss; the parties thereto shall pay the appraisers selected by them and shall bear equally the expenses of the appraisement and the umpire. This company shall not be held to have waived any provision or condition of this policy, or any forfeiture thereof by any requirement, act, or proceeding on its part relating to the appraisal. . . . And the loss shall not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proof of the loss herein required, have been received by this company, including an award of appraisers, when appraisal has been required. . . . No suit or action on this policy for the recovery of any claim, shall be sustained in any court of law or equity until after full compliance by the insured with all the foregoing requirements. . . . This policy is made and accepted subject to the foregoing stipulations and conditions.''

It is requisite, in view of one point made by the plaintiff in favor of an affirmance, to state the substance of the answer; for the plaintiff contends that by virtue of a like answer in a former suit, the defense of non-observance of the appraisement clause of the policy was waived. Besides a qualified general denial, the answer in this case interposed four defenses: First, a denial that the plaintiff had sustained damages to the amount alleged in the petition, $12,000. Second. There was a difference in regard to the amount of the loss and the above appraisement or arbitration clause was not carried out before the plaintiff sued; wherefore his action was premature. Third. The plaintiff falsely stated in his proofs of loss the sound value of the goods described

in the policy and the damages sustained. The answer alleged the damage did not exceed $1,000 instead of approaching $12,000, as sworn to in the proofs of loss. This false statement was averred to avoid the policy by virtue of a term in it that it should be void in case of any fraud or false swearing by the insured touching any matter relating to the insurance or the subject thereof, before or after the loss. Fourth. The plaintiff had set or caused the fire to be set, with the intent to defraud the defendant.

Plaintiff's reply admitted the execution of the arbitration agreement, "for the sole purpose of determining the amount of the loss or damage by fire to the property;" averred that he acted in good faith in selecting an appraiser, that the two appraisers had been unable, after making every reasonable effort to do so, to agree on an umpire, and had failed to determine the amount of damage done by the fire, without fault or connivance on the part of the plaintiff. The reply further averred that the insurance company fraudulently induced plaintiff to execute the arbitration agreement in order to prevent him from suing for his loss and with no intention to have the loss appraised, or to pay it; that the company failed and neglected to assist plaintiff in procuring an appraisement; that because of its conduct the failure to have the loss appraised was no bar to the prosecution of this action. In further avoidance of the defense of want of appraisement, the reply averred that after the agreement to appraise had been signed, but prior to the institution of the present action, the defendant had denied all liability to plaintiff for other reasons than non-appraisement of the loss, namely; because, as it contended, the plaintiff had made false statements under oath, as to the value of the goods and the amount of the damage and had intentionally caused the fire. It will be gathered from the above digest of the replication that it raised an issue as to a waiver by the defendant of the arbitration clause of the policy; and an issue also,

as to the defendant's good faith in the attempt made to obtain an appraisal.

In support of the defense that the cause of action had not accrued when the suit was instituted, the defendant introduced an agreement, executed by the plaintiff and seven insurance companies, including the defendant, and submitting to appraisers the question of the amount of the plaintiff's loss, with a proviso that the appraisement should be "without reference to any other questions or matters of difference within the terms and conditions of the policies of said company and shall not determine, waive or invalidate any other right or rights of either party to this agreement; but shall be of binding effect only so far as regards the sound value of the property before the fire and the direct or immediate total loss or damage caused by said fire to said property." That proviso accorded with the policy. The agreement contained the names of Sol Jonas of Aurora, Missouri, selected as appraiser by the plaintiff, and of M. A. Potts, selected by the company, and provided that those parties should choose an umpire to decide any differences they might have. Who asked for the appraisement was not shown; but the agreement was willingly signed by Carp and without fraudulent procurement by the company, though it may have cherished an intention to make use of the agreement to postpone or evade payment. It was signed May 14, 1902. On June 5th, Potts, the appraiser chosen by the company, wrote to Jonas, suggesting that before they went to any expense they ought to select an umpire. Potts asked Jonas to name two or three men who lived outside Aurora. Jonas immediately replied, suggesting the name of a man in Carterville. Potts declined to agree to that man and named three men residing in Kansas City, offering to accept any of them. Jonas refused to agree to one of those men and suggested Mr. Matlock, of Marionville, who proved unacceptable to Potts. Jonas then asked Potts whether there was any

one in Aurora, Peirce City, Mt. Vernon or Verona, all towns in southwest Missouri, on whom he would agree, and if so to state the name of that man. Potts replied that he could not think of any one in those towns as his acquaintance did not extend to them, but offered to take Mr. Sanford of Springfield. Jonas would not agree to Sanford, whereupon Potts suggested S. E. Post of Aurora. Jonas would not agree to Post because Post had been a witness against Sam Carp in a criminal prosecution for burning the store. Jonas accused Potts of being insincere in suggesting names from whom an umpire should be chosen. Potts next named Q. C. Boyd, of Mt. Vernon, and said he would continue to send names until Jonas accepted a good man or showed he was unwilling to arbitrate at all. Jonas refused Boyd, conceding he was a good man, but saying he showed some interest in the trial of Sam Carp on the criminal charge. In this letter he (Jonas) named four men, all from nearby towns, and told Potts if he did not agree to one of them by September 20th, that he would have nothing more to do with the affair. This letter was written September 12th, but Potts did not get it until September 18th, and then wrote saying he had no time to investigate the qualifications of the names submitted before the date fixed as the expiration of Jonas's ultimatum. In that letter Potts submitted the names of four men, residents of Lawrence county near Aurora. The next day, September 19th, Jonas wrote that as Potts had declined to accept any name sent him, Jonas would refuse to consider the names submitted by Potts; that further correspondence was useless and he (Jonas) would have nothing more to do with the matter. The two appraisers never met and all the business between them was conducted by correspondence. The letters, which extend over the interval from June 5th to September 19th, are written in a suspicious and captious strain, particularly on the part of Jonas, who was impressed with the belief that Potts's conduct was equiv-

ocal and that he did not intend to agree to a fair umpire. Those letters were put in evidence by the plaintiff for the purpose of proving the insurance company had waived the arbitration clause of the policy; and in further proof of that contention, the plaintiff introduced an answer which had been filed by the defendant company in a prior suit involving the same cause of action this one does, but instituted before any effort had been made to carry out the appraisal agreement. That case was dismissed by the plaintiff September 17, 1902, after the defendant had filed an answer exactly like the one filed in this case: that is to say, an answer pleading that the loss had never been appraised; that the plaintiff had been guilty of false swearing as to the value of the property and the amount of his loss and that the fire was of incendiary origin and due to his act or procurement.

The court admitted the first answer, against the objection of the defendant, on the theory that it tended to prove a denial of liability by the company on other grounds than a lack of appraisement, and, therefore, to prove the company had waived the appraisement clause of the policy before the institution of the present suit. The defendant saved an exception to that ruling and likewise saved an exception to the admission of the letters of the two appraisers, which were objected to as having no value as evidence to prove a waiver of the appraisement clause.

The court gave this instruction to the jury bearing on the point in hand:

"The court instructs the jury, that notwithstanding you may believe from the evidence that the policy of insurance sued on herein contains a provision to the effect that the loss, if any, under the policy should be determined by appraisers after due notice of loss had been given the company; yet, if you further believe from the evidence, that prior to the institution of this suit the

defendant company denied liability on the policy sued, for other reasons than that no arbitration has been consummated, then the necessity of arbitration was waived and the plaintiff is not precluded from recovering for that reason.''

The defendant requested a peremptory instruction for a verdict in its favor, which was refused by the court, as were other requests of the defendant which need not be recited. Exceptions were saved to the court's rulings on the instructions.

The above statement brings out fully, we think, the matters which demand attention in disposing of this appeal.

It is the law that a denial by an insurance company of any liability for a loss, dispenses with a term of the policy requiring an appraisement of the amount of the loss; because the purpose of an appraisement is to ascertain what the damage is in order that the company may discharge its obligation to indemnify the insured. If it takes the stand that it is not liable at all and will pay nothing, it would be senseless to incur the trouble and expense of an appraisement. Vining v. Ins. Co., 89 Mo. App. 311; Dautel v. Id., 65 Mo. App. 44. But does the same consequence result from pleading in an answer the defense of incendiarism, or other act of the insured sufficient to annul the policy, and also the defense that the loss had not been appraised? We think not. An insurance company may believe, for many reasons, that it has a complete defense on the merits to an action on a policy, and nevertheless prefer to settle with the insured at a reasonable estimate of his loss, rather than have litigation. The result of such litigation is doubtful and, moreover, may impair the confidence of a community in the company's willingness to pay its losses. If liability for the loss is not denied, it is the duty of the insured to demand an appraisal when the policy provides, as the one in suit does, for an appraisal as a condition precedent to the right to sue. Murphy v. Ins. Co., 61 Mo. App.

323; McNees v. Ins. Co., Id. 335; Hamilton v. Ins. Co., 136 Mo. 242; 4 Joyce, Ins., sec. 3231. If the insured sues without seeking an appraisement, the company may plead that fact in its answer as a defense. But it may state any other defense it has in the same answer; and, generally speaking, a defendant must plead all his defenses in one answer or forego such as are not stated. Cohn v. Lehman, 93 Mo. 574. If an insurance company alleges incendiarism, or other act sufficient to defeat the case, it does not waive thereby its defense of lack of appraisement. Little v. Harrington, 71 Mo. 391. Plaintiff's counsel do not say the company waived the arbitration requirement by the answer filed in the present action, but insist that it was waived as a defense to the present action by the answer filed in the first one. This reasoning is fallacious. If it were accepted, a policyholder could always elude the appraisal clause of his contract, or cut the insurance company out of a defense to his demand on the merits, by bringing an action, then dismissing it and bringing a second one. If, in the first action, the company answered, denying liability and stating a defense on the merits, that answer would constitute a waiver of the defense of lack of arbitration to the second action. If the company did not deny liability in the first action because of facts going to the merits, it would have to try the case without using those facts. The result would be that an insurance company could not defend an action on a policy both on the merits and for non-compliance with the appraisement clause. But the law is to the contrary. The denial of liability which dispenses with the necessity of an appraisal must occur, except under special circumstances, before answering in a suit on the policy; for a suit will not lie without previous appraisal, when the company has not denied liability or otherwise waived the condition. This question received attention and was decided in accordance with what we have said, in Kahnweiler v. Ins. Co., 57 Fed. 562. We quote from the opinion in that case:

"The plaintiffs insist that the provision in the policy for arbitration has been waived by the company, and is inoperative; that the company could not invoke that provision to abate or defeat the plaintiff's suit, because it made no demand for arbitration, and because it denied its liability *in toto*. This denial of liability *in toto* appears for the first time in the answer of the defendant in this suit. Up to that time the company had offered to pay its proportion of what it claimed was the actual loss of the insured, but there was an irreconcilable difference between the parties as to the amount of that loss, thus bringing the case within the provisions of the arbitration clause of the policy. Inasmuch as the arbitration should precede any suit, at no time during the period for arbitration did the company deny its liability for the loss. That the company had set up in one count of its answer a denial of any liability does not affect the case. It might waive any objection to the cause of the fire, and offer to settle, to avoid litigation; but this would not affect its right when sued, to set up in its answer any legal defense it had to the action."

Consult, too, Murphy v. Ins. Co., 61 Mo. App. 323; Phoenix Ins. Co. v. Varnahan, 58 N. E. 805.

The answer filed by the defendant in the first case, neither proved nor tended to prove a waiver of the arbitration clause of the policy and was improperly received in evidence for that purpose. In truth it insisted on the appraisement, as the present answer does.

For a kindred reason, the instruction that if the company denied liability prior to the institution of this suit for other reasons than that there had been no arbitration, the necessity of an arbitration was thereby waived, was erroneous. Nothing was adduced in support of the contention that the company had previously denied liability except the first answer, which was irrelevant.

It does not follow, as defendant's counsel argue, that the plaintiff should be nonsuited on account of the

prematurity of the action. While compliance with the arbitration clause of an insurance contract, such as we have here, is a condition precedent to the right to sue, and while a company may avail itself of the insured's default in that regard, both the company and the insured must act in good faith in an attempted compliance. The requirement can not be used as a means to baffle the insured or indefinitely postpone his right to sue. The law accepts the requirement as a just and reasonable method of ascertaining the amount of the loss, when the amount is in dispute, and insists that when it is invoked and put into operation, there shall be a fair and reasonable effort to make it successful. If the insured, or his chosen appraiser, acts in bad faith and prevents an appraisement by postponing indefinitely the choice of an umpire, or otherwise, the fact will be a defense to any suit he brings. Caledonia Ins. Co. v. Traub, 35 Atl. (Md.) 13; Hamilton v. Ins. Co., 136 U. S. 945. Hence if Carp or Jonas, by unfair or arbitrary conduct, caused the appraisement to fail, this action must fail too. When a company does not in good faith carry out an agreement to arbitrate the amount of the loss, but endeavors to utilize the agreement to obtain delay, it absolves the insured from compliance with the clause as a condition precedent to his right to sue (or waives an appraisal, if one chooses to put it that way, though the expression is not strictly accurate), and he may maintain an action although there has been no appraisement. The unfair behavior of an appraiser may be taken into account against the party that appointed him in fixing the blame for the failure to execute an appraisal agreement. McCullough v. Ins. Co., 113 Mo. 606; Uhrig v. Id., 101 N. Y. 362; Bishop v. Id., 130 N. Y. 488; Bradshaw v. Id., 137 N. Y. 137; Hickerson v. Ins. Co., 32 L. R. A. (Tenn.) 172; Brock v. Id., 26 L. R. A. (Mich.) 623; Chapman v. Ins. Co., 89 Wis. 572; Continental Ins. Co. v. Vallandingham, 76 S. W. (Ky.) 22. An appraiser, by whomsoever chosen, is ex-

pected to act as an impartial and disinterested judge; not as an advocate or automaton of one party to the controversy.

If both parties to an insurance contract endeavor to prevent an appraisal, or to render abortive an agreement for one, the appraisement clause of a contract will cease to be a condition precedent to a right of action; because neither the insured nor the company sincerely desires to have the loss ascertained in that manner.

A question of fact as to the bona fides of the parties arose on the correspondence, for the jury to determine. The letters might produce an impression against the sincerity of Carp or the company, or both; and if the company was to blame for the failure of the attempt to arbitrate, and Carp was innocent, this action was not prematurely brought; otherwise it was. An honest, but futile effort by the appraisers, unless it caused a too protracted and wholly unreasonable delay, would not dispense with the need of an appraisal. See cases supra; also Read v. Ins. Co., 103 Iowa 307; Westhaver v. Id., 84 N. W. 717; Vernon etc. Trust Co. v. Id., 63 N. E. 755.

The defendant insists that as the entire evidence on the question of why the arbitration failed, was found in the letters, it was for the court to construe them and determine their effect. But the rule of law that courts must determine the meaning of documentary evidence has no relevancy when the dispute is not as to the legal meaning of documents, but as to their tendency to prove one side or the other of an issue of fact and different inferences may be fairly drawn from them as to what the truth was. Chapman v. R. R., 146 Mo. 481. We think it was fairly a question for the jury under all the facts in this case, as to whether the failure to arbitrate was the fault of the insurance company or of Carp, and that said question ought to be submitted to them under proper instructions.

The plaintiff's counsel say there was no disagreement between Carp and the insurance company as to the amount of the loss, and that hence the arbitration clause did not become operative. It is certain the insurance company now disputes the value of the burned property and the extent of the loss as asserted by Carp, and the fact that the parties entered into an arbitration agreement is evidence that there was a disagreement before they entered into it. We think a party can not submit such a question to appraisers and then say the submission was void because there had been no dispute over the amount of the loss. The authorities cited to support this proposition are not in point; for they go merely to the proposition that when arbitration was not agreed to, an insurance company can not defend on the ground of lack of arbitration, if there had been no disagreement about the amount of the loss. That there had been no disagreement between these parties, if such was the fact, might have been a good reason for Carp's refusal to agree to an appraisal, but is not a good reason for treating the agreement he made for one, as a nullity.

Neither do we accept the argument that paintiff was privileged to withdraw from the appraisal agreement at any time. The law is the other way. Chapman v. Ins. Co., supra. Certain authorities are cited by the plaintiff's counsel in support of that contention; but they relate to instances where the arbitration was intended to cover the whole question of liability and not merely the value of the burned property. Arbitration provisions of that sort would, if enforced, oust courts of their jurisdiction; but it is different when the policy simply provides for an appraisal of the amount of damage sustained. Not only is it no privilege of an insured to withdraw from an agreement for an arbitration of that kind, but he can not sue on his policy until he has complied with the stipulation for such an arbitration or honestly tried to comply, unless the insurance company does something to excuse him.

The circuit court declined to permit Sam Carp to answer some questions propounded to him on cross-examination as to whether he had borne alias names or had tried to induce a witness in the case to swear falsely. The testimony sought to be elicited was competent as affecting his credibility. We think those matters were within the range of a proper cross-examination.

The judgment is reversed and the cause remanded. *Bland, P. J.,* and *Reyburn, J.,* concur.