# Richmond

THE HANOVER FIRE INSURANCE COMPANY v. MARGARET C. DRAKE AND H. T. DRAKE.

April 28, 1938.

Present, Holt, Hudgins, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Tazewell Taylor, Jr.,* for the plaintiff in error.

*James G. Martin & Son,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

Margaret C. Drake and H. T. Drake, sometimes hereinafter called the plaintiffs, brought this action at law against The Hanover Fire Insurance Company, hereinafter called the Insurance Company, to recover under a fire insurance policy the loss of and damage to certain of their household furniture and personal effects, resulting from a fire which occurred at the residence of the plaintiffs in Portsmouth.

The declaration contained two counts. The first alleged that the plaintiffs were entitled to recover under the terms of the policy the damage to or loss of their property, amounting to $2,493.38. The second count alleged that the plaintiffs were entitled to recover the same sum by virtue of an appraisal and award made pursuant to the terms of the policy, and fixing the loss and damage at that amount.

By separate special pleas the Insurance Company asserted the defenses, (1) that the plaintiffs had failed to file the required proof of loss, which was a condition precedent to the right to recover under the policy; and (2) that there had been no valid appraisal and award in accordance with the terms of the policy, and that this likewise precluded a recovery on the contract.

To these defenses the plaintiffs replied that the required proof of loss and appraisal had been waived by the Insurance Company.

After issue had been joined on these pleadings, there was a trial by a jury which found a verdict in favor of the plaintiffs in the sum of $1,821.71. On this verdict the trial court entered the judgment which is here for review.

There is considerable conflict in the evidence. But in the light of the jury's verdict in favor of the plaintiffs, and its approval by the trial court, the ascertained facts are as follows:

On September 1, 1936, while the plaintiffs were visiting at the seashore, their residence in Portsmouth was badly damaged and a large part of their household furniture and personal effects, covered by the policy in question, were

damaged or destroyed. On the morning after the fire the Insurance Company referred the adjustment of the loss and damage to W. H. Davidson, manager of the Norfolk office of The Fire Company's Adjustment Bureau, Inc., who promptly called upon H. T. Drake. In response to Drake's inquiry as to what procedure should be followed by him, Davidson replied that Drake should prepare an itemized list of the furniture, household goods, clothing, etc., which he claimed had been destroyed or damaged by the fire. Drake readily agreed to furnish this as soon as he and Mrs. Drake could make up the list.

A day or two later Drake telephoned Davidson that the list had been completed. Davidson went to Drake's store in Portsmouth and examined the list, which contained the items of the property, the cost, the sound value, and the loss claimed with reference to each item. Drake said, "Here's the list; I don't know if this is what you want or all you want; look at it and see." After examining the list Davidson took it, saying, "This is exactly what I want; get your hat; we'll go check it." Davidson and Drake then visited the scene of the fire and checked some of the damaged items. They then parted after Davidson had advised Drake that he (Davidson) would return in a day or two and give him (Drake) an adjustment on the damage.

Several days later Davidson returned and offered to settle the entire loss and damage at approximately $1,250. This amount Drake refused to accept on the ground that it was entirely too low. Davidson refused to increase his offer and told Drake that an appraisal of the loss and damage, in the manner required by the policy, would be necessary. Drake agreed to this and promptly selected S. J. Hayes, a clothing salesman in Portsmouth, as the appraiser on behalf of Mrs. Drake and himself. Davidson, on behalf of the Insurance Company, selected B. J. Willis, the operator of a furniture store in Norfolk. Later these appraisers selected W. C. Hughes as an umpire. An appraisal agreement was prepared by Davidson and signed in duplicate by

all of the parties in interest. One copy was delivered by Davidson to Drake, and the other copy to Willis.

The two appraisers and the umpire then proceeded to the scene of the fire. After appraising a few articles, differences arose between the two appraisers, making it necessary that they call upon the umpire for his opinion. Almost immediately it became evident that the figures placed on the various articles by the umpire were greatly in excess of the amounts which Willis thought right. After several times expressing his dissatisfaction with the umpire's decisions, Willis said to the other appraiser and the umpire, "Well, gentlemen, I'm quitting; you're all working together; it's entirely up to you gentlemen to do what you please; I'm quitting." However, at the urgent insistence of the appraiser and umpire, Willis continued until they came to appraise a wall case or china closet. Here, again, the umpire placed upon the article a value which Willis thought was excessive. Whereupon Willis said, "I'm quitting for good." Again, the umpire and the appraiser urged Willis to continue, and the appraisers then undertook to agree upon the damage to the clothing. Finally Willis announced that he would not agree to more than $700 for the clothing, and the same amount for the other articles, making a total of $1,400, saying, "If you don't accept $1,400, I'm through." This figure the other appraiser and the umpire declined to accept.

The parties then left the premises. Willis returned to Norfolk and declined to take any further part in the appraisal. Subsequently Hayes, the other appraiser, and Hughes, the umpire, returned to the scene and finally agreed on the sum of $2,493.38 as the total amount of the loss and damage. After inserting this as the amount of their award, the form was signed by Hayes as one of the appraisers and Hughes as the umpire, and delivered to Drake.

Drake called at Willis' office and told him the result arrived at by the other appraiser and umpire, and requested that Willis give him the duplicate copy of the appraisal agreement in order that he might file both copies with

Davidson. This Willis declined to do. Whereupon Drake telephoned to Davidson this state of affairs: That he had one copy of the award signed by Hayes and Hughes, fixing the damage at $2,493.38; that Willis had refused to sign this copy and had declined to give him (Drake) the other copy. Drake then offered to file the signed copy with Davidson, who declined to accept it, saying that another appraisal would be necessary. Davidson also refused to pay the amount arrived at by Hayes and Hughes, and Drake refused to agree to another appraisal.

Thereupon Drake, on behalf of his wife and himself, telegraphed the Insurance Company saying that Willis, its appraiser, had refused to cooperate in the appraisal, that Davidson claimed that the matter was "out of his hands," and threatening suit unless the matter be settled promptly. To this telegram the Insurance Company curtly replied that the matter was in the hands of the adjuster.

Shortly thereafter, more than sixty days having elapsed since the date of the fire, the present suit was instituted.

Considerable testimony was taken as to the loss of and damage to the various articles covered by the policy. The evidence on behalf of the plaintiffs showed that the total loss and damage amounted to the sum sued for, namely $2,493.38, while the evidence on behalf of the Insurance Company was to the effect that the various articles were not damaged to this extent, and that the total loss and damage did not exceed $1,500. The jury fixed the amount at $1,821.71, which is amply supported by the evidence.

The jury was instructed that the filing of a proof of loss and the filing of an award arrived at in the manner prescribed in the policy, were essential to the plaintiffs' recovery under the policy, unless these requisites had been waived by the Insurance Company.

The first contention of the Insurance Company is that there is no evidence that the formal proof of loss required by the policy was waived.

While it is true that the filing of a proof of loss is ordinarily treated as a prerequisite to the insured's right to

recover under the policy, it is universally held that such a requirement may be waived by the insurance company, either expressly or by the conduct of its duly authorized agent.

It is well settled that if a fire insurance company, after notice of a loss, enters into negotiations with the insured looking to a settlement, and the negotiations fail because of inability to agree on the amount of the loss, the insurer thereby waives the right to demand the formal proof of loss stipulated for in the policy. See 14 R. C. L., pp. 1347, 1348, sec. 519; 26 C. J., p. 403, sec. 517; Ann. Cas. 1916A, p. 594, note; *Concordia Insurance Co.* v. *School District*, 282 U. S. 545, 548, 51 S. Ct. 275, 75 L. Ed. 528; *Niagara Fire Insurance Co.* v. *Raleigh Hardware Co.* (C. C. A. 4), 62 F. (2d) 705, 707.

Furthermore, in 14 R. C. L., p. 1349, sec. 521, the author says: "A distinct recognition of liability by the insurer, as by an offer to pay all or a part of the loss, amounts to a waiver of formal notice and proof of loss or of defects therein." This proposition is supported by numerous authorities. Among others see *Providence Washington Ins. Co.* v. *Wolf*, 168 Ind. 690, 698, 80 N. E. 26, 120 Am. St. Rep. 395; *Concordia Insurance Co.* v. *School District*, *supra;* *United States Fire Insurance Co.* v. *Smith*, 231 Ala. 169, 164 So. 70, 103 A. L. R. 1468; *St. Paul Fire & Marine Insurance Co.* v. *Pipkin* (Tex. Civ. App.), 207 S. W. 360, 363; Ann. Cas. 1916A, 595, note; 26 C. J., p. 406, sec. 521; Couch Cyclopedia of Insurance Law, vol. 7, p. 5571, sec. 1578.

In the instant case the Insurance Company does not deny liability on the policy. Indeed, it recognizes its obligation to pay the plaintiffs the amount of loss and damage actually suffered by them, and the parties differ only as to what amount should be paid.

The undisputed evidence is that immediately after the fire the adjuster appointed by the Insurance Company called upon Drake and obtained from him an itemized statement of all the articles claimed to have been damaged or

destroyed, with the cost and sound value of each article, and the estimated damage to each. Drake gave the representative of the Insurance Company all of the knowledge which he had pertaining to the cause and origin of the fire. There is no claim that any of these statements were untrue or misleading.

With this information in hand the adjuster made an independent investigation of the matter, arrived at what he thought was the proper amount due to the plaintiffs, and offered to pay them the sum of $1,250. This amount Drake refused to accept, insisting that he and Mrs. Drake were entitled to be paid much more than this.

The Insurance Company then, through its own appraiser, undertook to appraise the loss and damage. While the negotiations for a settlement and the efforts to appraise the property were unsuccessful, yet, in the meantime, the Insurance Company had through its investigation, and through its dealings with the plaintiffs, secured all of the information which the formal proofs of loss were designed to furnish. It will be remembered that Davidson, the adjuster, had told Drake that the itemized list which the latter had furnished was exactly what he wanted and all that he desired. All of this occurred within the time fixed by the policy for filing a formal proof of loss.

Under these circumstances we are of opinion that the Insurance Company clearly waived the filing of the formal proof of loss stipulated in the policy.

Nor do we find any merit in the claim of the Insurance Company that this suit can not be maintained for the reason that there has been no valid appraisal and award in accordance with the terms of the policy.

The policy here involved is the standard fire insurance policy. It contains a stipulation that in case the insured and the company shall fail to agree as to the amount of loss or damage, then such loss or damage shall be determined and fixed by an appraisal to be filed with the company.

The policy further provides: "The amount of loss or damage for which this Company may be liable shall be

payable sixty days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss or damage is made either by agreement between the insured and this Company expressed in writing or by the filing with this Company of an award as herein provided.

"No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, nor unless commenced within twelve months next after the fire."

■ This court held in *North British & Mercantile Insurance Co.* v. *Robinett & Green,* 112 Va. 754, 72 S. E. 668, that the award is a necessary element of the plaintiff's cause of action, if demanded at a time when the company has a right to demand it, and it can be made.

And it was further held that under the particular facts of that case the insurance company had not waived the filing of the award.

■ But, as it is said in Couch Cyclopedia of Insurance Law, vol. 7, pp. 5641, 5642, sec. 1613, "A clause in an insurance policy, providing for an arbitration or appraisement of loss or damage as a condition precedent to suit by the policyholder to recover insurance, is inserted wholly for the protection of the insurer, and, consequently, may, as a general rule, be waived by it. * * *  Nor need such waivers be expressed in terms; they may be implied from the acts, omissions, or conduct of the insurer or its authorized agents, * * *."

See also, 14 R. C. L., p. 1357, sec. 528; 47 L. R. A. (N. S.), p. 425, note, citing numerous cases.

■ In an annotation in 94 A. L. R. 499, 506, the author states that "it is well settled that the failure of arbitration through the fault of the insurer, or its arbitrator or appraiser, abrogates the provision for arbitration, and the insured, if free from fault in the matter, is absolved from compliance with such provision, and may bring suit on the policy without an award." The text is supported by numerous decisions.

██

██ In *Norwich Union Fire Ins. Soc. Ltd.* v. *Cohn* (C. C. A. 10), 68 F. (2d) 42, 43, 94 A. L. R. 494 (certiorari denied, 291 U. S. 665, 54 S. Ct. 440, 78 L. Ed. 1056), it was held that where the insured had entered into an agreement for an appraisal of loss and the appraisal failed without her fault, she was not required to enter into a second appraisal agreement as a condition precedent to recovery on the policy.

██ These principles clearly apply to the instant case. The jury was justified under the evidence in finding that the failure to complete the appraisal was due to no fault of the plaintiffs. Indeed, the evidence is undisputed that the failure to complete the appraisal was due to the fact that Willis, the appraiser for the Insurance Company, refused to proceed, because he thought that the figures arrived at by the other appraiser and the umpire were excessive.

Since the evidence conclusively shows that the failure to file a completed appraisal and award was due entirely to the fault of the representative of the Insurance Company, the latter is estopped to interpose the defense that this suit can not be maintained because such appraisal and award have not been filed. By the conduct of its representative the Insurance Company has waived such appraisal and award.

On the whole we find no error in the proceedings complained of, and the judgment is

*Affirmed.*