293 Md. 409 (1982)
445 A.2d 14
THE AETNA CASUALTY & SURETY COMPANY
v.
INSURANCE COMMISSIONER, STATE OF MARYLAND ET AL.
[No. 62, September Term, 1981.]
Court of Appeals of Maryland.
Decided May 13, 1982.
*410 The cause was argued before MURPHY, C.J., and SMITH, DIGGES,[*] ELDRIDGE, COLE, DAVIDSON, and RODOWSKY, JJ.
George M. Radcliffe and Scott A. Hunsicker for appellant.
Michael L. Cohen, Assistant Attorney General, with whom was Stephen H. Sachs, Attorney General, on the brief, for appellee Insurance Commissioner and by Thomas N. Biddison, Jr. for appellee Archdiocese of Baltimore.
DAVIDSON, J., delivered the opinion of the Court.
This case concerns the effect of an appraisal clause in a standard fire insurance policy that establishes an appraisal procedure to be followed when the insurer and the insured fail to agree on the amount of loss. More particularly, this case presents the question whether, under such an appraisal clause, an insured can compel an insurer to submit to appraisal.
The relevant provisions of the standard fire insurance policy here involved states:
"Appraisal. In case the insured and this Company shall fail to agree as to the actual cash value of the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for *411 fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.
...
"When loss payable. The amount of loss for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company and as settlement of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this Company of an award as herein provided.
"Suit. No suit or action on this policy for the recovery of any claim can be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with and unless commenced within twelve months next after inception of the loss." (Emphasis added.)
In 1977, the appellant, The Aetna Casualty & Surety Company (insurer), issued an insurance policy to an appellee, the Archdiocese of Baltimore (insured), insuring the St. Stanislaus Kostka Hall (the Hall) against all risks of direct physical loss. On 5 July 1978, the Hall was severely damaged by fire. The insured promptly notified the insurer of the loss.
*412 The insured's Director of Insurance (Director) was authorized to negotiate a settlement of the fire loss claim. In accordance with his customary procedures, he sought bids for the restoration of the Hall to its pre-fire condition from two restoration contractors who would use the "walk-through" method of estimating which consists of basing a bid upon a detailed inspection of the building.
The insured's Building and Properties Commission (Commission) was dissatisfed with the "walk-through" method relied on by the Director. The Commission suggested to the Director that instead, estimates be obtained based upon plans and specifications detailing the work necessary to restore the Hall to its pre-fire condition. The Director and the insurer were notified that the Commission retained the right to reject any offer of settlement made by the insurer based upon the "walk-through" method bids.
Thereafter, the Director instructed the two "walk-through" method bidders to submit their estimates directly to the insurer. On 9 November 1978, the insurer offered an adjustment of the loss based upon the amount of $366,010.00, the amount of the lower of the two "walk-through" method bids. The Commission rejected the adjustment.
Subsequently, the Commission obtained plans and specifications for the restoration of the Hall. On 9 March 1979, the Commission received three bids based upon those plans and specifications, the lowest of which exceeded the lower of the previous "walk-through" method bids by approximately $159,516.00. Thereafter, the insured attempted to negotiate a settlement on the basis of the new bids. The insurer refused to settle on any basis other than the adjustment previously offered.
On 30 April 1979, the insured, invoking the appraisal clause in the insurance policy, demanded appointment of appraisers. The insurer asserted that the amounts of the Commission's bids were higher than the amounts of the "walk-through" method bids because they were based on plans and specifications designed not merely to restore the *413 Hall to its pre-fire condition, but rather to substantially improve it, and because of inflation that occurred during the Commission's unreasonable delay in obtaining its bids. The insurer insisted that its policy did not provide coverage for either of these increased costs. It concluded that the appraisal clause was inapplicable because the disagreement between the two parties involved a question of coverage and not amount of loss, and refused to submit to appraisal.
Various proceedings were held before the Insurance Commissioner of the State of Maryland, see Maryland Code (1957, 1979 Repl. Vol.), Art. 48A, § 55(2) (iv) and § 55A,[1] and in the Baltimore City Court, see Art. 48A, § 40(1).[2] Ultimately, that trial court determined that the Insurance Commissioner did not have the authority to order the insurer to submit to appraisal.
On 14 June 1980, the insurer filed a Petition for Declaratory and Injunctive Relief. The petition requested a declaration that the insurer was not required to submit to appraisal and an injunction restraining the Insurance Commissioner from suspending or revoking its license or imposing a fine. The insured filed a cross-petition for declaratory *414 relief seeking an affirmative declaration that the insurer must comply with the appraisal clause and pay the amount of money that the appraisal determined to be due.
After a hearing, the trial court declared that the insurer was required to submit to appraisal and to pay the insured the cash value of the loss that the appraisal determined to be due. The trial court entered a judgment in favor of the insured.
The insurer appealed to the Court of Special Appeals. We issued a writ of certiorari before consideration by that Court. We shall affirm the judgment of the trial court.
This Court has recognized that under an insurance contract providing that an insured and an insurer shall submit to appraisal when they cannot agree as to the amount of loss, it is the duty of both parties to act in good faith and to make a fair effort to carry out such provision and accomplish its object. The Shawnee Fire Ins. Co. of Topeka, Kansas v. Pontfield, 110 Md. 353, 360, 72 A. 835, 836 (1909); The Connecticut Fire Ins. Co. of Hartford v. Cohen, 97 Md. 294, 303, 55 A. 675, 678 (1903); The Caledonian Ins. Co. of Scotland v. Traub, 83 Md. 524, 533, 35 A. 13, 15 (1896). We have additionally noted that under such an appraisal clause, a determination by the appraisers of the amount of the loss is a condition precedent to a suit on the policy by the insured. Traub, 83 Md. at 533, 35 A. at 15. Thus, we have stated:
"[W]here the failure to secure an award after submission to arbitration is due to the fault of the insured the absence of an award is a bar to an action on the policy, but where it is due to the fault of the insurance company or its appraiser the insured may bring suit on his policy without an award." Pontfield, 110 Md. at 360, 72 A. at 836.
However, this Court has not previously considered whether under such an appraisal clause an insured can compel an insurer to submit to appraisal.
Courts in some jurisdictions in which the question has been considered have held that under such an appraisal *415 clause an insured may compel an insurer to submit to an appraisal. E.g., Drescher v. Excelsior Ins. Co. of New York, 188 F. Supp. 158, 159 (D.N.J. 1960); Hala Cleaners, Inc. v. Sussex Mut. Ins. Co., 115 N.J. Super. 11, 13, 277 A.2d 897, 898 (1971); Saba v. Homeland Ins. Co. of America, 159 Ohio St. 237, 239-40, 112 N.E.2d 1, 2-3 (1953); Ice City, Inc. v. Insurance Co. of North America, 456 Pa. 210, 216-20, 314 A.2d 236, 240-42 (1974); Standard Fire Ins. Co. v. Fraiman, 514 S.W.2d 343, 345-47 (Tex.Civ.App. 1974); see, e.g., Orient Ins. Co. v. Skellet Co., 28 F.2d 968, 969 (8th Cir.1928); Itasca Paper Co. v. Niagara Fire Ins. Co., 175 Minn. 73, 79-80, 220 N.W. 425, 427-28 (1928); Abramowitz v. Continental Ins. Co., 170 Minn. 215, 218, 212 N.W. 449, 449-50 (1927), overruled in part on other grounds, 209 Minn. 182, 187, 296 N.W. 475, 478 (1941). These courts premise this conclusion on three grounds. Such a conclusion is consonant with the plain language of an appraisal clause establishing that submission to appraisal is mandatory when demanded by either the insured or the insurer. It is also consonant with the principle that an insured is entitled to receive the benefit of a bargain for which premiums were paid, including the right to settlement of his loss without the expense and delay of litigation. Finally, such a result is consonant with a legislative policy in favor of enforcement of executory agreements to arbitrate.
The underlying rationale for the principle that under an appraisal clause, an insured can compel an insurer to submit to appraisal was explained in detail in Saba v. Homeland Insurance Company of America, 159 Ohio St. 237, 112 N.E.2d 1 (1953). There, an appraisal clause provided:
"In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser...." Saba, 159 Ohio St. at 238, 112 N.E.2d at 2 (emphasis added).
In determining that the court had the authority to compel *416 the insurer to submit to appraisal, the Supreme Court of Ohio said:
"This provision is not an involved one, the words are simple, and the meaning is clear. Appraisers are to be selected on the demand of either party. In none of the policies is there the slightest intimation that the selection is to be made on the demand of the insurer and not on the demand of the insured. If this were the import of the provision, there could be no excuse for the use of the word `either.'
"This view is sustained by the succeeding word `each.' There is no suggestion that the insured alone shall select an appraiser on demand. As indicated by Ballentine's Law Dictionary, the obvious meaning of the word `each' is `every one of the two or more comprising the whole.'
"Nor is there doubt about the use of the next succeeding word `shall.' It clearly is employed in its ordinary mandatory sense. Furthermore, there is nothing in the context to warrant an inference that the word is used in a mandatory sense as to the insured alone and not as to the insurer. The provisions are not revocable by either.
"Hence, unless these words are held to signify the exact opposite of their obvious meaning, the appraisers must be selected when demanded by the insured or by the insurer.
...
"The [insurers] insist further that if they refuse to select an appraiser, the [insured] has no recourse except to file suits on his policies.
"This is equivalent to telling the [insured] that, although he paid a premium for the policies containing the advantage of the appraisal provisions, he in fact received nothing therefor, and that the sole result of the insertion of the appraisal provisions *417 in the policies was that the [insurers] gave themselves the advantageous right to compel the [insured] to select an appraiser before he could sue on the policies. Hence, under this theory the appraisal provisions were a detriment instead of a benefit to the [insured], inasmuch as even without the appraisal provisions he, of course, had the right to sue. The [insured] was led to believe that he was purchasing policies giving him the right to an appraisal and a prompt settlement of his loss so he would have the insurance money with which to reconstruct his building without the expense and delay incident to litigation. Obviously this is a valuable right which he should not be denied. The failure and refusal of the [insurers] to select an appraiser as required by the provisions of the policies constituted a failure to agree on an umpire just as effectively as if they had selected an appraiser and instructed him not to agree on an umpire. Under these circumstances the [insured] was authorized to request the court to select such umpire.
"That this view of the policy provisions is consistent with the legislative policy of this state is demonstrated by the provisions of Section 12148-1 et seq., General Code, to the effect that such arbitration provisions in a written contract `shall be valid, irrevocable and enforceable.'" Saba, 159 Ohio St. at 240-42, 112 N.E.2d at 2-3 (emphasis in original).
Thus, the Supreme Court of Ohio held that when an insurer refuses to comply with an agreement to submit to appraisal, the insured can compel compliance.
Courts in some jurisdictions have held that under an appraisal clause providing that an insured and an insurer shall submit to appraisal when they cannot agree as to the amount of loss, an insured may not compel an insurer to submit to appraisal. E.g. Roumel v. Niagara Fire Ins. Co., 225 *418 A.2d 658, 660 (D.C. 1967); National Fire Ins. Co. v. Shuman, 44 Ga. App. 819, 819, 163 S.E. 306, 306 (1931); Happy Hank Auction Co. v. American Fire Ins. Co., 1 N.Y.2d 534, 538, 136 N.E.2d 842, 843-44, 154 N.Y.S.2d 870, 872 (1956); In re Delmar Box Co., 309 N.Y. 60, 63-67, 127 N.E.2d 808, 810-13 (1955); see, e.g., Rademaker v. Atlas Assur. Co., 98 Ohio App. 15, 22-24, 120 N.E.2d 592, 595-96 (1954); Hanover Fire Ins. Co. v. Drake, 170 Va. 257, 265, 196 S.E. 664, 667 (1938). These courts reason that despite the mandatory language of such an appraisal clause, the clause is inserted "wholly for the protection of the insurer...." Drake, 170 Va. at 265, 196 S.E. at 667. Moreover, these courts assert that because of the basic distinctions between appraisal under a standard fire insurance policy and statutory arbitration, the legislative policy favoring enforcement of executory agreements to arbitrate is inapplicable. E.g., Happy Hank Auction Co., 1 N.Y.2d at 538, 136 N.E.2d at 844, 154 N.Y.S.2d at 872; In re Delmar Box Co., 309 N.Y. at 63-67, 127 N.E.2d at 810-13; In re Rademaker, 98 Ohio App. at 19-24, 120 N.E.2d at 594-96. As stated by the Court of Appeals of New York in In re Delmar Box Co., 309 N.Y. 60, 63-67, 127 N.E.2d 808, 810-13 (1955):
"A number of basic distinctions have long prevailed between an appraisement under the standard fire policy and a statutory arbitration. An agreement for arbitration ordinarily encompasses the disposition of the entire controversy between the parties, upon which judgment may be entered after judicial confirmation of the arbitration award, while the agreement for appraisal extends merely to the resolution of the specific issues of actual cash value and the amount of loss, all other issues being reserved for determination in a plenary action. Appraisal proceedings are, moreover, attended by a larger measure of informality, and appraisers are `not bound to the strict judicial investigation of an arbitration.' Arbitrators are required to take a formal oath, and may act only upon proof adduced *419 at a hearing of which due notice has been given to each of the parties. They may not predicate their award upon evidence garnered through an ex parte investigation of their own, at least unless so authorized by the parties. Appraisers, on the other hand, are not required to take an oath. They are likewise `not obliged to give the claimant any formal notice or to hear evidence'; and they may apparently proceed by ex parte investigation, so long as the parties are given an opportunity to make statements and explanations to the appraisers with regard to the matters in issue.
"Furthermore, in an arbitration, all the arbitrators, if there be more than one, `must meet together and hear all the allegations and proofs of the parties.' The standard appraisal clause, in contrast, specifically recites that the umpire is not to participate in the appraisal in all cases, but is only to pass on such differences as there may be between the appraisers designated by the respective parties. In addition, the vacatur of an arbitration award invariably results in a new arbitration, whereas after an appraisal award has been set aside without any fault on the part of the insured, he is not required to submit to any further appraisement but is free to litigate the issues in an action at law on the policy.
"[T]he decisions were uniformly to the effect that the standard provision in a fire insurance policy for appraisal did not constitute an agreement for arbitration and was not specifically enforcible under the statutory procedure applicable to contracts for arbitration. The appraisal provisions were recognized and enforced by the courts only to the extent that the insured was prevented from maintaining an action on the policy in the event of his failure to comply therewith. If the defaulting party happened to be the insurance company, the insured could disregard the appraisal provisions and present all *420 the issues for determination in an action at law upon the policy. The insured, however, had no remedy available to compel the insurance company specifically to comply with the appraisal provisions.
...
"It may, perhaps, be desirable to provide a procedure whereby the insured may obtain specific enforcement, as against the insurance company, of the agreement for appraisal. If such be its aim, the legislature may accomplish it by a statute clearly and specifically drawn for that purpose." (Citations omitted)
We are persuaded that under the appraisal clause here, the appropriate principle to be applied is that ordinarily an insured may compel an insurer to submit to appraisal. The plain language of the appraisal clause, the need to preserve the insured's bargained for benefit, and the legislative policy in favor of enforcement of executory agreements to arbitrate, dictate this result.
In Maryland, under the objective law of contracts, a court, in construing an agreement, must first determine from the language of the agreement itself, what a reasonable person in the position of the parties would have meant at the time it was effectuated. Anne Arundel County v. Crofton Corp., 286 Md. 666, 673, 410 A.2d 228, 232 (1980); Ray v. Eurice, 201 Md. 115, 127, 93 A.2d 272, 278-79 (1952). Where the languge of the contract is unambiguous, its plain meaning will be given effect. There is no need for further construction. Bernstein v. Kapneck, 290 Md. 452, 459-60, 430 A.2d 602, 606 (1981); Woodham v. Woodham, 235 Md. 356, 360, 201 A.2d 674, 676 (1964).
Here, the appraisal clause expressly provides that in the event of a failure to agree on the amount of loss, on the written demand of either the insured or the insurer, each shall select an appraiser. This language is plain and unambiguous. It mandates that both the insured and the insurer submit to appraisal upon the demand of either, *421 thereby assuring that the insured as well as the insurer has a contractual right to a prompt and inexpensive determination of the amount of loss. That contractual right, for which the insured bargained and paid premiums, can be preserved only if the insured is enabled to compel the insurer to submit to appraisal.
In addition, the Maryland Uniform Arbitration Act, enacted in 1965,[3] now Maryland Code (1974, 1980 Repl. Vol.) §§ 3-201 through 3-234 of the Courts and Judicial Proceedings Article, embodies a legislative policy favoring enforcement of executory agreements to arbitrate. Bel Pre Medical Center, Inc. v. Frederick Contractors, Inc., 21 Md. App. 307, 320, 320 A.2d 558, 566 (1974), rev'd on other grounds, 274 Md. 307, 334 A.2d 526 (1975). The language of the Maryland Uniform Arbitration Act is plain and unambiguous. It states that an executory agreement to submit to arbitration is enforceable. § 3-206(a).[4] It expressly provides that a court has jurisdiction to enforce an agreement to submit to arbitration. § 3-202.[5] It specifies that if a party refuses to arbitrate, a court may compel that party to submit to arbitration. § 3-207 (a) & (c).[6] Additionally, it explicitly authorizes the court to appoint arbitrators if the agreed appointment method fails. *422 § 3-211.[7] This statutory language establishes that when a party refuses to comply with an agreement mandating submission to arbitration, a court has the authority to compel submission to arbitration. Thus, the Maryland Uniform Arbitration Act, by authorizing courts to consider and determine suits to compel arbitration, establishes a legislative policy that executory agreements to submit to arbitration be enforced.
In Maryland, this Court has long recognized that, notwithstanding the distinctions between an appraisal under an insurance policy appraisal clause and arbitration, appraisal is analogous to arbitration. Consequently, this Court has applied arbitration law to appraisal clauses in insurance policies. E.g. Traub, 83 Md. at 531-32, 35 A. at 15; see, e.g., Pontfield, 110 Md. at 360, 72 A. at 836; Cohen, 97 Md. at 302, 55 A. at 678.
As long ago as 1896, in The Caledonian Insurance Co. of Scotland v. Traub, 83 Md. 524, 35 A. 13 (1896), this Court considered the effect and legal consequences of an appraisal clause in a fire insurance policy. That appraisal clause provided:
"In the event of disagreement as to amount of loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and failing to agree shall submit their differences to the umpire, and the award in writing of any two shall determine the *423 amount of such loss." Traub, 83 Md. at 530-31, 35 A. at 15.
There, the insured and the insurer each selected an appraiser. The two appraisers selected an umpire. The insured's appraiser withdrew before the appraisal was completed. The insurer's appraiser and the umpire completed the appraisal and issued an award without the concurrence of the insured's appraiser. In reaching its decision that the award was not in accordance with the appraisal clause, this Court said:
"Independently of the distinct requirement of the policy the law would require combined action by the appraisers who were selected by the parties. They occupied the position of arbitrators. And with respect to the duties of arbitrators the law is fully settled. In the first volume of American and English Encyclopedia of Law, p. 683, a great number of authorities are collected, and the accepted doctrine is stated as follows: `All must be present throughout each and every meeting, equally whether the meeting be for hearing the evidence or arguments of the parties or for consultation or determination upon the award. The disputants are entitled to the exercise of the judgment and discretion, and to the benefits of the views, arguments and influence of each one of the persons whom they have chosen to judge between them; and they are entitled to these, not only in the award, but at every stage of the arbitration, even where a majority are empowered to decide."[8]Traub, 83 Md. at 531-32, 35 A. at 15 (emphasis added).
*424 Thus, our holding that ordinarily an insured can compel an insurer to submit to appraisal when the insurer refuses to comply with a mandatory appraisal clause is consonant with Maryland's legislative policy favoring enforcement of executory agreements to arbitrate.
Under the circumstances here,[9] the trial court did not err. Accordingly, we shall affirm.
Judgment of the Baltimore City Court affirmed.
Costs to be paid by appellant.
NOTES
[*] Reporter's Note: Digges, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution Article IV, Section 3A, he also participated in the decision and adoption of this opinion.
[1] Art. 48A, § 55 (2) (iv) provides in pertinent part:

"(2) ... The Commissioner may refuse to issue or after a hearing refuse to renew, or may revoke or suspend an insurer's certificate of authority ... if the insurer:
...
"(iv) Without just cause unreasonably refuses or delays payment to claimants of the amount due them." (Emphasis added.) Art. 48A, § 55A provides in pertinent part:
"In lieu of or in addition to revocation or suspension of an insurer's certificate of authority the Commissioner may (1) impose a penalty of not less than one hundred dollars ($100) or more than fifty thousand dollars ($50,000) for each violation of this article...."
[2] Art. 48A, § 40 (l) provides in pertinent part:

"An appeal from the Commissioner shall be taken only from an order.... The appeal shall be taken to the Baltimore City Court...."
[3] 1965 Md. Laws, ch. 231, § 2.
[4] § 3-206 (a) provides:

"A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy arising between the parties in the future is valid and enforceable, and is irrevocable, except upon grounds that exist at law or in equity for the revocation of a contract." (Emphasis added.)
[5] § 3-202 provides:

"An agreement providing for arbitration under the law of the State confers jurisdiction on a court to enforce the agreement and enter judgment on an arbitration award." (Emphasis added.)
[6] § 3-207 (a) provides:

"If a party to an arbitration agreement described in § 3-202 refuses to arbitrate, the other party may file a petition with a court to order arbitration."
§ 3-207 (c) provides in pertinent part:
"If the court determines that the agreement exists, it shall order arbitration." (Emphasis added.)
[7] § 3-211 provides in pertinent part:

"(a) ... If the arbitration agreement provides a method of appointment of arbitrators, this method shall be followed.
...
"(c) A court shall appoint one or more arbitrators if:
...
"(2) The agreed method fails or for any reason cannot be followed...." (Emphasis added.)
[8] § 3-215 provides in pertinent part:

"(a) ... The majority of the arbitrators may determine any question and render a final award.
"(b) ... If an arbitrator for any reason ceases to act during the course of the arbitration hearing, the remaining arbitrators or arbitrator appointed to act as neutral, may continue with a hearing and the determination of the controversy." (Emphasis added.)
[9] The insurer's remaining contentions are without merit. The insurer's contention that the appraisal clause is inapplicable because the disagreement between the insured and the insurer involved a question of coverage and not amount of loss is unsupported by the record, that shows that the disagreement involved the amount of loss. Similarly, the insurer's contention that the insured is precluded from appraisal because it failed to request appraisal within a reasonable time after the loss is unsupported by the record, that shows that the request was made within a reasonable time. Because there was more than sufficient evidence to support the trial court's findings, those findings were not clearly erroneous. Md. Rule 886.