PRESENT: All the Justices

RMBS RECOVERY HOLDINGS, I, LLC,
ET AL.

v. Record No. 180473

HSBC BANK USA, N.A.                             OPINION BY
                                        JUSTICE S. BERNARD GOODWYN
                                               May 30, 2019
HSBC BANK USA, N.A.

v. Record No. 180557

RMBS RECOVERY HOLDINGS, I, LLC,
ET AL.


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Stephen C. Shannon, Judge

In these appeals, we consider whether the circuit court erred when it sustained a motion

to dismiss based upon forum selection clauses, and when it denied a motion to dismiss based

upon the doctrine of forum non conveniens.

BACKGROUND

On May 30, 2017, RMBS Recovery Holdings I, LLC; RMBS Recovery Holdings II,

LLC; RMBS Recovery Holdings IV, LLC; RMBS Recovery Holdings V, LLC; Fir Tree Ref III

Master Fund, LLC; Fir Tree Capital Opportunity Master Fund, LP; and Fir Tree Capital

Opportunity Master Fund III, LP (collectively, Funds) filed suit against HSBC Bank USA,

National Association (HSBC) in the Circuit Court of the County of Fairfax. The four limited

liability companies were organized in Delaware, and the two limited partnerships in the Cayman

Islands. HSBC's main office is in McLean, Virginia, which is in Fairfax County (Fairfax), and

HSBC does business throughout the United States, including Virginia.

The Funds assert that HSBC serves as an indenture trustee[1] of three trusts in which the Funds have invested. The trusts, established in 2005 and 2006, are residential mortgage-backed securities trusts; they are made up of thousands of residential mortgage loans. The trusts were formed pursuant to pooling and service agreements (PSAs). According to their contractual terms, the PSAs are to be construed according to the laws of the State of New York.

The trusts are governed by numerous contractual provisions which require that only qualifying loans be deposited into the trusts. The sponsors of the trusts, DB Structured Products, Inc. and Nomura Credit & Capital, Inc. (collectively Sponsors), were responsible for depositing only qualifying loans, and agreed to either replace or repurchase defective loans placed in the trusts.

The Funds claim that without their knowledge, the trusts were "filled with defective mortgage loans" and HSBC, as trustee, had a duty to protect the Funds by having the Sponsors repurchase the deficient loans or by filing suit against the Sponsors. Beginning in 2011, the Funds reportedly notified HSBC that the Sponsors had breached their representations and warranties, and asked HSBC to enforce the Sponsors' repurchase obligations. HSBC responded that it would not act until the Funds agreed to a Confidentiality and Indemnification Agreement (CIA).

In light of the impending statutes of limitations bar, the Funds filed derivative actions against the Sponsors (Repurchase Actions) prior to expiration of the limitations periods. The Funds and HSBC executed CIAs on July 12, 2012 and September 6, 2012. Both dates are after

---

[1] Unlike an ordinary trustee, an indenture trustee "has his [or her] rights and duties defined, not by the fiduciary relationship, but exclusively by the terms of the agreement." *AG Capital Funding Partners, L.P. v. State St. Bank and Trust Co.*, 896 N.E.2d 61, 66 (N.Y. 2008) (citation and internal quotation marks omitted).

the statutes of limitations had expired on the claims against the Sponsors. After the CIAs were executed, HSBC was substituted into the Repurchase Actions as plaintiff. However, the Repurchase Actions, which were filed in New York, were dismissed as untimely because HSBC failed to intervene before the statutes of limitations ran.

In the Fairfax complaint, the Funds claimed that HSBC "knowingly let the statutes of limitations expire, depriving certificateholders of any recourse from the [S]ponsors, and needlessly costing the trusts hundreds of millions of dollars." Based upon HSBC's failure to act, the Funds claimed breach of contract, breach of fiduciary duty, negligence, breach of the implied covenant of good faith and fair dealing, and violations of the Federal Trust Indenture Act.

*Motion to Dismiss for Forum Non Conveniens*

On June 29, 2017, HSBC filed a motion to dismiss for forum non conveniens, pursuant to Code § 8.01-265. HSBC argued that New York City was a "more convenient and practical forum" because (1) the Funds' investment manager, Fir Tree Partners, Inc. (Fir Tree) is located in New York, (2) the PSAs were formed under New York law, (3) the related documentary evidence and witnesses are primarily located in New York, (4) the Repurchase Actions were filed in New York, and (5) New York courts are familiar with the legal issues presented in this case because "virtually identical" actions are pending in New York courts against indenture trustees of similar trusts.

In support, HSBC attached a declaration from Thomas MacKay, HSBC's Senior Vice President. MacKay attested that (1) HSBC's "principal executive office" and the department that oversees indenture trustee functions are located in New York City, (2) the Sponsors' principal place of business is New York, (3) HSBC employees directly involved with the underlying

3

allegations work in New York City, and (4) one of the Repurchase Actions has been pending on appeal in New York since 2016.

In response, the Funds argued that the motion should be denied because HSBC cannot show that Fairfax is a "substantially inconvenient" jurisdiction. They asserted that (1) HSBC is a citizen of Virginia because its main office is in McLean, Virginia, (2) four of the Funds are Virginia citizens because they have investors who reside in and are citizens of Virginia, (3) the plaintiff's choice of forum has a presumption of correctness, (4) HSBC's employees have not been identified as witnesses, (5) nine of the fourteen identified witnesses live outside of New York, "and for most Fairfax is closer and faster to reach than New York," (6) four of the five witnesses in New York are employees of litigants, and it is presumed the employer can ensure their testimony at trial, (7) witnesses can be deposed where they live, (8) the relevant documents are electronic, (9) Virginia courts are capable of applying New York law, and (10) "[c]onsiderations of ease, speed, and economy strongly favor Fairfax over New York," especially considering New York courts permit interlocutory appeals "of right of virtually all trial court rulings," thereby prolonging cases almost indefinitely.

The Funds attached declarations of Jay S. Handlin, an attorney representing the Funds, and David Proman, the managing director of Fir Tree. Handlin stated that in twenty other cases similar to the one at issue, including three against HSBC, all documents have been produced electronically and depositions have been taken of witnesses where they live or work to reduce inconvenience. He also stated that Fairfax, Virginia was closer to most of the signatories to the PSAs at issue. Proman listed the fourteen known witnesses, and noted that only five of them live or work in New York.

4

The circuit court held a hearing on HSBC's motion to dismiss on July 21, 2017. During the hearing, HSBC contended that "[t]he question is whether [Virginia] is an appropriate forum, and under the good cause analysis, [Virginia] is not an appropriate forum [], because everything that matters to this case—the witnesses, the functions, the trust, the law, the prior litigation that preceded this—it all took place in New York." By contrast, the Funds argued that the loans that form the basis for the misconduct allegations arise out of Virginia, New York, and multiple states, and many of the defective loans were made to Virginia borrowers.

At the end of the hearing, the circuit court commented that it was counterintuitive to think that a "multibillion-dollar international banking institution" that "elected to have its office here in Fairfax" could then be inconvenienced by litigation in Fairfax. The court reasoned, "I don't think you can set up business here in Fairfax, which I suspect is probably business-friendly, and then when you're sued say, oh, you can't sue us here; come up to New York where it takes years to try the case." The court concluded that the Fairfax County Circuit Court was a proper and convenient forum, and denied the motion to dismiss for forum non conveniens on July 21, 2017.[2]

*Motion to Dismiss Pursuant to Forum Selection Clauses*

From June 2017 through February 2018, the litigation of the case continued. In addition to the motion to dismiss for forum non conveniens, HSBC filed and argued demurrers, a plea in bar, a motion craving oyer, motions for the admission of counsel, several discovery motions, and a motion for leave to file a third-party complaint. It also asked for a judge to be assigned to the case, requested a jury trial, and agreed to a trial date. Over the eight months, HSBC filed an

---

[2] The motion to dismiss for forum non conveniens was heard and ruled upon by Judge Robert J. Smith of the Circuit Court of Fairfax County.

answer and a third-party complaint, and the circuit court held multiple hearings and either granted or denied HSBC's various requests for relief.

On November 3, 2017, the circuit court sustained HSBC's demurrer to the good faith and fair dealing claim and granted the Funds leave solely to amend the good faith and fair dealing claim in the complaint. On November 27, 2017, the Funds filed an amended complaint.

In response, on December 18, 2017, HSBC filed another demurrer and an answer. It also filed a motion to dismiss, arguing that forum selection clauses in the CIAs designated New York City as the required forum for litigation.

HSBC attached the CIAs to the motion to dismiss. The CIAs provide as follows:

> Section 4.8 <u>Governing law; Jurisdiction; Waiver of Jury Trial</u>.
> This agreement shall be construed and interpreted in accordance with the laws of the State of New York . . . .
>
> Each of HSBC, the Instructing Parties and the Master Funds[3] irrevocably and unconditionally agrees and consents to the exclusive jurisdiction of the courts of the State of New York and of the United States of America located in the City of New York, New York for any actions, suits or proceedings arising out of or relating to this agreement and the transactions contemplated hereby, and further agrees not to commence any action, suit or proceedings relating thereto except in such courts.

HSBC and the Funds signed both CIAs. HSBC contended that the language of the forum selection clauses in the CIAs is broad enough to include the claims alleged by the Funds in the amended complaint.

On February 2, 2018, the circuit court held a hearing on HSBC's motion to dismiss based upon the forum selection clauses. The Funds argued that the motion to dismiss was another venue motion by HSBC, which HSBC should have raised when it moved to dismiss for forum

---

[3] The "Instructing Parties" include the four RMBS Recovery plaintiffs and the "Master Funds" include the three Fir Tree plaintiffs, of the Funds.

non conveniens. The Funds contended that the motion was untimely because, under Code § 8.01-264(A), challenges to venue are to be filed within 21 days of the initial service of process. The Funds also asserted that HSBC waived any objection to venue by continuing to participate in litigation from June through December of 2017, and that the forum selection clauses do not apply to the case at bar.

HSBC responded that its assertion of the forum selection clauses was not a venue challenge and Code § 8.01-264 did not apply because it was not arguing that venue was improper. HSBC further noted that no Virginia state court has found a forum selection clause to be waivable.

The circuit court subsequently granted the motion to dismiss based upon the forum selection clauses. The court found that the motion to dismiss was based on improper venue, and that it was timely filed under Code § 8.01-264. The court reasoned that HSBC's assertion of the forum selection clauses was timely because it was a venue objection brought within 21 days of the amended complaint being filed.

The circuit court also found that HSBC had not waived its right to enforce the forum selection clauses. The circuit court reasoned that the Funds' assertion that HSBC had waived its venue argument by continuing to litigate in the court was unavailing because "[u]ntil the amended complaint was filed by plaintiffs, defendant could not attempt to transfer venue again, so it was resigned to file [its pleadings] in this court, until it was statutorily permitted to argue for a change in venue a second time," upon the filing of the amended complaint. The court found that the Funds would not be prejudiced by having the case litigated in New York. The circuit court also concluded that under the PSAs, HSBC was not required to sue until the CIAs were

7

finalized, and in the CIAs the parties agreed to litigate in New York, which is, therefore, where the case belongs. The circuit court dismissed the amended complaint without prejudice.

The Funds and HSBC filed separate appeals. The Funds appeal the dismissal of the amended complaint based upon the forum selection clauses. HSBC appeals the denial of its motion to dismiss based upon the doctrine of forum non conveniens.

ANALYSIS

A. *Dismissal of the Funds' Amended Complaint Based Upon the Forum Selection Clauses*

On appeal, the Funds argue that HSBC's motion to dismiss based on the CIA forum selection clauses should have been denied as untimely under Code § 8.01-264(A), because the motion was not raised in HSBC's responsive pleadings following the commencement of the action. They further argue that the circuit court erred in finding that HSBC did not waive its objection to venue on the basis of the forum selection clauses because HSBC did not raise its objection until six months into litigation, after filing a forum non conveniens motion, a demurrer, pleas in bar, a motion craving oyer, an answer, a third-party complaint, requesting a trial by jury, and agreeing on a jury trial date. They also argue that if they are forced to re-litigate in New York, it will take three to five years, which is inconsistent with Virginia's policy on the administration of justice without delay or prejudice.

In response, HSBC argues that Code § 8.01-264 does not apply because the motion to dismiss was not an objection to venue within the statute's meaning of that term. It contends that Code § 8.01-264 is limited to venue challenges that allege the present forum is an improper venue, and HSBC's motion to dismiss did not allege that the circuit court was an improper forum.

8

HSBC also argues that it did not waive enforcement of the forum selection clauses because it opposed the forum at each available opportunity, and the law in Virginia favors enforcement of forum selection clauses and disfavors finding waiver.

"[M]atters of substantive law are governed by the law of the place of the transaction, and matters of remedy and procedure are governed by the law of the place where the action is brought." *Willard v. Aetna Cas. & Sur. Co.*, 213 Va. 481, 483 (1973). "Questions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature." *Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir. 1990); *see also Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010) ("As an agreement purporting to modify or waive the venue of a federal court, a forum selection clause implicates what is recognized as a procedural matter."). Thus, we must look to Virginia law to determine whether the circuit court erred in ruling that the timeliness of the motion to dismiss was governed by Code § 8.01-264, and that HSBC did not waive its right to assert the forum selection clauses as a basis for a change in venue.

A question of statutory interpretation presents a question of law, subject to de novo review by this Court. *Boynton v. Kilgore*, 271 Va. 220, 227 (2006). In our analysis, we seek to give effect to the legislature's intent in enacting the statute by applying the plain meaning of the language used. *Id.*

Code § 8.01-260 states that "*the venue* for any action shall be deemed proper *only if laid in accordance with the provisions of §§ 8.01-261 and 8.01-262*." (Emphases added.) Code § 8.01-261 lists forums designated as "Category A" or preferred venues, and, in turn, Code § 8.01-262 lists forums designated as "Category B" or permissible venues. The parties' choice

of forum under a forum selection clause is not mentioned as either a preferred or permissible venue.

Code § 8.01-264(A) provides that venue "shall be subject to objection" if laid in "forums other than those designated by this chapter [§§ 8.01-257 to -267]."

> In actions where venue is subject to objection, the action may nevertheless be tried where it is commenced, *and the venue irregularity* shall be deemed to have been waived unless the defendant objects to venue by motion filed . . . within twenty-one days after service of process commencing the action, or within the period of any extension of time for filing responsive pleadings fixed by order of the court. . . . *If such motion is sustained, the court shall order the venue transferred to a proper forum under the appropriate provisions of [Code] §§ 8.01-195.4, 8.01-260, 8.01-261 and 8.01-262* and shall so notify each party.

*Id.* (emphases added).

Relevant to this case, Code § 8.01-262(1) provides that venue is permissible in the county "[w]herein [the defendant's] principal office or principal place of business is located." It is not disputed that Fairfax is a permissible venue for this action.

HSBC did not allege a venue irregularity that would be subject to objection in the manner described in Code § 8.01-264(A). Code § 8.01-264(A) does not address an instance, as here, in which venue is properly laid but another forum has been otherwise agreed to by the parties in a forum selection clause. *See Atlantic Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Texas*, 571 U.S. 49, 59 (2013) ("[A] forum selection clause does not render venue in a court 'wrong' or 'improper.'"). Thus, the circuit court erred when it found that HSBC sought timely enforcement of the forum selection clauses because its motion purportedly complied with the requirements of Code § 8.01-264(A). Code § 8.01-264 does not address or apply to motions to dismiss based upon forum selection clauses, and the circuit court erred when it placed significant weight on and erroneously determined this improper factor.

10

"[N]otwithstanding the provisions of [Code] §§ 8.01-195.4, 8.01-260, 8.01-261 and 8.01-262," for good cause shown, a court may dismiss an action in favor of "a more convenient forum." Code § 8.01-265. "Good cause shall be deemed to include, but not be limited to, *the agreement of the parties*." Code § 8.01-265 (emphasis added).

Thus, venue can be challenged even if there are no statutory irregularities concerning the chosen venue, and a contractual forum selection clause may constitute good cause to dismiss an action in favor of an agreed forum. While not a statutory venue challenge, a motion to dismiss on the basis of a contractually-agreed forum selection clause is a type of challenge to the venue of the court. *See Atlantic Marine Constr.*, 571 U.S. at 63-64 (describing the agreement to bring suit in a specified forum as a choice of venue).

"An objection to venue is addressed to the sound discretion of the trial court" and the court's decision "will not be reversed on appeal unless the record affirmatively reflects an abuse of discretion." *Meyer v. Brown*, 256 Va. 53, 56-57 (1998). A circuit court abuses its discretion

> when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment.

*Lambert v. Sea Oats Condo. Ass'n, Inc.*, 293 Va. 245, 253 (2017) (citation and internal quotation marks omitted). A circuit court also abuses its discretion when it is guided by erroneous legal conclusions. *Id.*

"[C]ontractual provisions limiting the place or court where potential actions between the parties may be brought are prima facie valid and should be enforced, unless the party challenging enforcement establishes that such provisions are unfair or unreasonable, or are affected by fraud or unequal bargaining power." *Paul Bus. Sys., Inc. v. Canon U.S.A., Inc.*, 240 Va. 337, 342

11

(1990). However, a party to a contract may waive a right conferred upon it by the contract. *Roenke v. Virginia Farm Bureau Mut. Ins. Co.*, 209 Va. 128, 135 (1968). The right being for that party's benefit, that party may choose whether to exercise or waive the right. *Id.* "[T]he owner of such right may waive it expressly, either in writing or by parol, and *impliedly by inconsistent conduct*." *Id.* (emphasis added) (citation and internal quotation marks omitted). "[A] waiver must be express, or, if it is to be implied, it must be established by clear and convincing evidence." *Pysell v. Keck*, 263 Va. 457, 460 (2002) (citation and internal quotation marks omitted).

As with other contractual provisions, to determine whether a party has waived enforcement of a forum selection clause, the court must consider the extent to which the party has taken actions inconsistent with its enforcement. *See Hanover Fire Ins. Co. v. Drake*, 170 Va. 257, 263-64 (1938) (holding that an insurance company waived its right to enforce an appraisal provision in the insurance policy as a condition precedent to suit by entering into negotiations and pursuing settlement, which was inconsistent with enforcing that provision); *Kettler Int'l, Inc. v. Starbucks Corp.*, 55 F. Supp. 3d 839, 849-50 (E.D. Va. 2014) (holding that a defendant waived its right to enforce a forum selection clause by filing a third-party complaint against the plaintiff on the same contract in a forum other than that designated by the forum selection clause). Factors relevant to this determination include the timeliness of the party's assertion of the clause and the degree to which the party has continued to utilize the "litigation machinery" in the unauthorized forum. *See Kettler*, 55 F. Supp. 3d at 850 (finding waiver of a forum selection clause when a party has taken action inconsistent with its enforcement or delayed its enforcement to the prejudice of the opposing party); *see also MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001) (finding waiver of a right to arbitration "if the party so substantially utiliz[es]

12

the litigation machinery that to subsequently permit arbitration would prejudice" the opposing party, and that "delay and the extent of the moving party's trial-oriented activity are material factors") (citation and internal quotation marks omitted).

When it is established that the party has relinquished its right, having knowledge of the right and the intention to waive it, the waiver will be enforced. *Woodmen of World Life Ins. Soc'y v. Grant*, 185 Va. 288, 299 (1946). "It is, of course, elementary that silence, when there is a duty to speak, may result in the waiver of one's rights or the estoppel to assert them." *Virginia Auto Mut. Ins. Co. v. Brillhart*, 187 Va. 336, 349 (1948).

Accordingly, the prescriptions of timeliness contained in Code § 8.01-264, while not statutorily applicable, may be informative in determining whether the defendant has acted inconsistently with its right to assert the forum selection clause. In *Faison v. Hudson*, 243 Va. 413, 418 (1992), this Court held that the defendant waived her objection to venue under Code § 8.01-264 because she delayed seeking dismissal or transfer of the case for six months after she filed her objection. While her objection was timely *filed* as required by Code § 8.01-264, we held that the objection to venue also had to be *asserted* promptly. *Id.* Thus, we ruled that the circuit court did not abuse its discretion when it found that the defendant waived her objection to venue when she failed to notice her objection for hearing until six months later. *Id.*

Similarly, in this case, HSBC agreed to the forum selection clauses in 2012, and thus, knew of its right under these provisions prior to the Funds' commencing this action, but did not mention the CIAs or their forum selection clauses in any of its responses to the complaint. Before filing the motion to dismiss based upon the forum selection clauses, HSBC extensively utilized the "litigation machinery" of the circuit court by arguing and receiving rulings on a demurrer, a plea in bar, a motion craving oyer, several discovery motions, a motion to have a

13

judge assigned to the case, leave to file a third-party complaint, and a motion to dismiss on the grounds of forum non conveniens. Had HSBC intended to enforce the clauses, it could have mentioned them in its motion to dismiss. *See* Code § 8.01-265 ("Good cause [to dismiss an action in favor of a more convenient forum] shall be deemed to include, but not to be limited to, the agreement of the parties."). It did not do so. Instead, HSBC chose to pursue litigation in the circuit court for more than six months in a manner that was inconsistent with its supposed contractual right to litigate in New York.

The circuit court erred in concluding that the filing of an amended complaint provided HSBC the statutory right to assert its motion to dismiss based upon the forum selection clause. As noted above, Code § 8.01-264 does not address forum selection clauses and provided no statutory excuse for HSBC's delay in asserting its alleged contractual right to a different venue.

The circuit court failed to consider and to give significant weight to the appropriate factors of timeliness in asserting the contractual right and the extent to which HSBC acted inconsistently with the intention to enforce the forum selection clauses. Thus, it abused its discretion when it dismissed the action on the basis of the CIA forum selection clauses because the record demonstrates that HSBC waived its right to enforce the clauses. We conclude that HSBC's delay in asserting the forum selection clauses, while actively continuing litigation, resulted in a waiver of the right to rely upon that contractual provision. For this reason, we reverse the circuit court as to its dismissal of the amended complaint under the forum selection clauses.

*B. Denial of Motion to Dismiss Based Upon the Doctrine of Forum Non Conveniens*

HSBC argues that the circuit court erred when it denied HSBC's motion to dismiss on the basis of forum non conveniens. It contends that it demonstrated "good cause" to dismiss the

14

action under Code § 8.01-265, because trial in New York would avoid "substantial inconvenience" in that none of the witnesses are located in Virginia but all of HSBC's relevant employee-witnesses, and several of the Funds' witnesses, are located in New York; the relevant documents are located in New York; and HSBC's principal place of business, including its indenture trustee business, is New York. HSBC argues that New York courts would have compulsory process over any New York witnesses and their documents, while Virginia courts have no compulsory process where all witnesses are out of state. HSBC acknowledges that cases are tried more quickly in Virginia, but asserts that the circuit court neglected to account for ease and expense in considering the efficiency of the litigation. It further contends that this case concerns "a complex and evolving body of New York law" regarding the duties of indenture trustees, and could be consolidated with similar cases currently being litigated in New York courts.

By contrast, the Funds argue that the circuit court did not abuse its discretion when it denied the motion to dismiss premised on the doctrine of forum non conveniens because there is a meaningful connection with Virginia and the Funds' choice of forum is presumed correct. The Funds contend there is a meaningful connection to Virginia because HSBC's main office is registered here, four investors in the Funds are Virginia residents who were impacted by HSBC's wrongs, and more than $15 million in damages sought in this case relate to delinquent loans issued to Virginia borrowers. The Funds also note that Virginia is closer to most of the witnesses and trials are resolved more expeditiously in Virginia. Further, the Funds contend that HSBC failed to rebut the presumption that their choice of forum is correct.

Virginia's forum non conveniens statute provides,

the court wherein an action is commenced may, upon motion by any party and *for good cause shown*, (i) dismiss an action brought by a person who is not a resident

15

of the Commonwealth without prejudice under such conditions as the court deems appropriate if the cause of action arose outside of the Commonwealth and *if the court determines that a more convenient forum* which has jurisdiction over all parties is available in a jurisdiction other than the Commonwealth . . . .

Code § 8.01-265 (emphases added). "Good cause shall be deemed to include, but not to be limited to, the agreement of the parties or *the avoidance of substantial inconvenience to the parties or the witnesses*, or complying with the law of any other state or the United States." *Id.* (emphasis added).

There is no formula for application of the doctrine of forum non conveniens but circumstances ordinarily considered include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling [witnesses], and the cost of obtaining attendance of willing witnesses; . . . and *all other practical problems that make trial of a case easy, expeditious and inexpensive*." *Norfolk and Western Ry. Co. v. Williams*, 239 Va. 390, 393 (1990) (emphasis added) (citation and internal quotation marks omitted).

A "presumption of correctness attaches to a plaintiff's choice of forum" but this presumption is not absolute. *Id.* at 394. "[T]he weight afforded that choice is diminished when . . . the action has at best only a technical, formal connection with the original court chosen." *Id.* at 395-96. "Careful consideration of the facts, a balancing of the competing interests, and an analysis of the appropriate principles must be undertaken in each case." *Id.* at 393.

Here, the circuit court did not abuse its discretion in finding that good cause did not exist to dismiss the Virginia litigation based upon the principles of forum non conveniens. The circuit court appropriately considered the practicalities that make a trial "easy, expeditious, and inexpensive" when it considered that HSBC's registered office is in McLean, Virginia; that nine of the Funds' witnesses could more easily reach Virginia than New York; that litigation is

16

several years faster in Virginia; and that there is a presumption of correctness ascribed to the Funds' choice of forum. HSBC did not identify any witnesses expected to testify, and while HSBC conducts its indenture trustee operations in New York, there was no evidence it could not recover related documents electronically just as easily in Virginia. Accordingly, we cannot conclude that the circuit court abused its discretion in finding that HSBC did not present good cause for dismissing the action under the doctrine of forum non conveniens. For this reason, we affirm the circuit court's judgment denying the motion to dismiss based on the doctrine of forum non conveniens.

CONCLUSION

The judgment of the circuit court is affirmed in part and reversed in part. We affirm that portion of the circuit court's disposition denying HSBC's motion to dismiss based on the doctrine of forum non conveniens. We reverse the circuit court's judgment dismissing the case by enforcing the forum selection clauses, and we remand the case for further proceedings consistent with this opinion.

*Affirmed in part,*
*reversed in part,*
*and remanded.*